07-30-4820                                                    ARDC No. 01144642

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **RICK ALEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2007 C 5049** |
| | ) | |
| **VILLAGE OF HANOVER PARK, et al.** | ) | |
| | ) | |
| **Defendants** | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, VILLAGE OF HANOVER PARK, an Illinois Municipal Corporation (hereinafter "VILLAGE"), OFFICER TODD CARLSON (hereinafter "CARLSON"), OFFICER ERIC VILLANUEVA (hereinafter "VILLANUEVA") and SERGEANT CAROL LUSSKY (hereinafter "LUSSKY"), and submit the attached Memorandum of Law in Support of their Motion for Summary Judgment.

HARTIGAN & O'CONNOR, P.C.
Russell W. Hartigan
Patrick H. O'Connor
Michael R. Hartigan
20 N. Clark Street #1250
Chicago, IL  60602
(312)201-8880
(312)201-8905 (F)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………………. iv-v

EXHIBIT LIST…………………………………………………………….. vi

PROCEDURAL HISTORY……… ………………………………………... 1

STATEMENT OF FACTS ……………………………………………. 2

STANDARD OF REVIEW …………………………………………. 6

ARGUMENT ………………………………………………………. 7

I.  BASED UPON THE TOTALITY OF CIRCUMSTANCES,
   PROBABLE CAUSE EXISTED TO ARREST RICK ALEMAN…. 7

    A.  Arrest for Aggravated Battery to a Child
   (September 9, 2005)……………………………………….. 8

    B.  Arrest for First Degree Murder (September 15, 2005).. 9

    C.  Even if there was no probable cause to arrest, the
   Defendants are entitled to qualified immunity……..…... 12

II.  THERE CAN BE NO FAILURE TO INTERVENE IF THE
   ARRESTS WERE SUPPORTED BY PROBABLE CAUSE…… 13

III.  THERE IS NO EVIDENCE OF A CONSPIRACY TO DEPRIVE
   THE PLAINTIFF OF HIS CONSITUTIONAL RIGHTS………… 14

IV.  THERE IS NO "ILLEGAL INTERROGATION" AFTER PLAINTIFF
   WAS ADVISED OF HIS *MIRANDA* RIGHTS, CONFERRED WITH
   HIS ATTORNEY AND SIGNED A *MIRANDA* WAIVER AGAINST
   COUNSEL'S ADVICE…………………………………………… 16

V.  PLAINTIFF'S COUNTS VI and VII FOR MALICIOUS
   PROSECUTION MUST FAIL AS PROBABLE CAUSE
   EXISTED TO PROSECUTE ALEMAN AND THERE IS NO
   EVIDENCE OF MALICE…………………………………………… 18

VI.  PLAINTIFF'S STATE LAW CLAIMS FOR CONSPIRACY AND
   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE
   BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS
   SET FORTH IN 745 ILCS 10/8-101……………………………….. 22

CONCLUSION ................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

<u>Aboufariss v. City of DeKalb</u>, 305 Ill.App.3d 1054, 713 N.E.2d 804
(Ill.App. 2 Dist., 1999)…………………………………………………………………20

<u>Adams v. Sussman & Hertzberg, Ltd.</u>, 292 Ill.App.3d 30, 684 N.E.2d 935
(Ill. App. 1 Dist., 1997)…………………………………………………………...18

<u>Amundsen v. Chicago Park Dist</u>., 218 F.3d 712 (7th Cir.2000)…………………..14

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)……………………… …….6

<u>Brooks v. City of Chicago</u>, 442 F.3d 544 (7th Cir. 2006)…………………….. …….7

<u>Celotex Corp v. Catrett</u>, 477 U.S. 317 (1986)……………………………………… 6

<u>Cervantes v. Jones</u>, 23 F.Supp.2d 885 (N.D. Ill. 1998)…………………………...19

<u>Chavez v. Ill. State Police</u>, 251 F.3d 612 (7th Cir.2001)…………………………..13

<u>Davis v. United States</u>, 512 U.S. 452 (1994)…………………………………….. 16

<u>Deng v. Sears, Roebuck, & Co.</u> 552 F.3d 574 (7th Cir. 2009)…………………….. 7

<u>Edwards v. Cabrera</u>, 58 F.3d 290 (7th Cir. 1995)…………………………………12

<u>Fries v. Helsper</u>, 146 F.3d 452 (7th Cir.1998)………………...……………………14

<u>Golla v. General Motors Corp.</u>, 167 Ill.2d 353, 657 N.E.2d 894 (Ill.1995)….…….23

<u>Hunter v. Bryant</u>, 502 U.S. 224(1991)…………………………………...………..12

<u>Illinois v. Gates</u>, 462 U.S. 213 (1983)…………………………………………….....7

<u>Johnson v. Target Stores, Inc.</u>, 341 Ill.App.3d 56, 791 N.E.2d 1206
(Ill.App. 1 Dist. 2003)……………………………………………………...19, 20

<u>Kelley v. Myler</u>, 149 F.3d 641 (7th Cir. 2000)…….………………………………..8

<u>Meerbrey v. Marshall Field and Co., Inc.</u>, 139 Ill.2d 455, 564 N.E.2d 1222
(Ill. 1990)…………………………………………………………………………..18

<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966)…………………………………….…16, 17

<u>Mustafa v. City of Chicago</u>, 442 F.3d 544 (7th Cir. 2006)………………………8, 11

iv

People v. Harris, 352 Ill.App.3d 63, 815 N.E.2d 863
(Ill.App. 1 Dist. 2004)……………………………………………...……………… 20

Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996)…………………19, 21

Sang Ken Kim v. City of Chicago, 368 Ill.App.3d 648, 858 N.E.2d 569
(Ill.App. 1 Dist. 2006)……………………………………………………19, 20, 21

Scherer v. Balkema, 840 F.2d 437 (7th Cir.1988)……….……………………14

Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892
(7th Cir. 2001)………………………………………………………………………..19

Stagman v. Ryan, 176 F.3d 986 (7th Cir.1999)……….……………………………14

Turner v. City of Chicago, 91 Ill.App.3d 931, 415 N.E.2d 481
(Ill.App. 1 Dist. 1980)……………………………………………...………20, 21, 22

Washington v. Summerville, 127 F.3d 552 (7th Cir. 1997)………..……………..18

Williams v. Lampe, 399 F.3d 867 (7th Cir. 2005)………..…….………………23

United States v. Hayes, 236 F.3d 891 (7th Cir. 2001)……………………………..7

United States v. Hobbs, 509 F.3d 353 (7th Cir. 2007)………………………………7

United States v. Sawyer, 224 F.3d 675 (7th Cir. 2000)……………….…..……7, 11

## <u>EXHIBIT LIST</u>

Exhibit 1:    Transcript of deposition of Plaintiff, Rick Aleman.

Exhibit 2:    Transcript of September 12, 2005 Preliminary Hearing on charges of Aggravated Battery of a Child,

Exhibit 3:    Transcript of September 15, 2005 Preliminary Hearing on charges of First Degree Murder.

Exhibit 4:    Transcript of deposition of Sergeant Carol Lussky

Exhibit 5:    Transcript of deposition of Detective Eric Villanueva

Exhibit 6:    Transcript of deposition of Detective Todd Carlson

Exhibit 7:    Transcript of deposition of Dr. Albert Hasson

Exhibit 8:    Transcript of deposition of Dr. Gerardo Reyes

Exhibit 9:    Transcript of deposition of Dr. Michael Seigle

Exhibit 10:    Transcript of deposition of Dr. Nancy Jones

Exhibit 11:    Transcript of September 22, 2005 Grand Jury Testimony of Carl Gutman

Exhibit 12:    Transcript of October 6, 2005 Grand Jury Testimony of Adam Michalik

Exhibit 13:    Two Count Indictment of First Degree Murder – October 2005

Exhibit 14:    Transcript of deposition of Danielle Schrik

## PROCEDURAL HISTORY

On September 7, 2007, the Plaintiff, RICK ALEMAN, filed his initial

Complaint at Law for alleged constitutional injuries sustained on September 9,

2005 and thereafter. (Docket Entry #1). On February 25, 2008, Plaintiff filed his

First Amended Complaint. (Docket Entry #43). On March 17, 2008, the Village

Defendants filed their Answer to Plaintiff's First Amended Complaint at Law

denying all material allegations raised therein. (Docket Entry #44).

The nine (9) counts for which the Defendants are seeking summary

judgment are:

Count I: 42 U.S.C. §1983: False Arrest/Imprisonment
(Directed against all individually named
Defendants arising out of the September 9, 2005
arrest).

Count II: 42 U.S.C. §1983: Failure to Intervene
(Directed against all individually named Defendants).

Count III: 42 U.S.C. §1983: False Arrest/Imprisonment
(Directed only against Fallon and Carlson arising out
of the September 15, 2005 arrest).

Count IV: 42 U.S.C. §1983: Civil Conspiracy
(Directed against all individually named Defendants).

Count V: 42 U.S.C. §1983: Illegal Interrogation
(Directed only against Micci and Villanueva).

Count VI: State Law: Malicious Prosecution
(Directed only against Villanueva)

Count VII: State Law: Malicious Prosecution
(Directed only against Carlson).

Count VIII: State Law: Civil Conspiracy.
(Directed against all individually-named Defendants)

Count IX:  State Law: Intentional Infliction of Emotional Distress.
(Directed against all individually-named Defendants)

## **STATEMENT OF FACTS**

From May 2005 until the date of the occurrence, the Plaintiff, Rick Aleman, operated a day-care service from his home located in Hanover Park. (Def. 56.1, ¶5). Plaintiff first began to care for Joshua Schrik, an eleven (11) month child, during the first week of September 2005. (Def. 56.1, ¶7). Specifically, Aleman first day with Joshua Schrik was on Wednesday, September 7th, 2005. (Def. 56.1, ¶7).

On Thursday, September 8, 2005, Joshua was seen by his pediatrician, Dr. Albert Hasson. (Def. 56.1, ¶77). As of that date, Joshua's fever had resolved and there were no abnormal findings upon physical examination. (Def. 56.1, ¶¶77, 82).

On Friday, September 9, 2005, the date of the occurrence, Joshua was dropped at the Plaintiff's home by his mother, Danielle Schrik at approximately 8:00-8:15AM. (Def. 56.1, ¶¶10; 114). Later that morning, Joshua Schrik became unresponsive whereby Aleman made efforts to revive the child by shaking him "as you would shake anybody else that's sleeping." (Def. 56.1, ¶12). The child's head moved back and forth during the revival effort. (Def. 56.1, ¶13). After failing to revive Joshua, the Plaintiff called 911. (Def. 56.1, ¶14). Hanover Park Fire Department arrived at Aleman's home immediately after the Plaintiff called 911. (Def. 56.1, ¶15)

Hanover Park Police Officer Carol Lussky arrived at the Aleman home at approximately 9:45AM. (Def. 56.1, ¶35). She had instructed her colleague, Detective Carlson, to go to the hospital to interview the mother of the injured baby and to interview treating physicians. (Def. 56.1, ¶¶36, 60). While at his home, Aleman demonstrated to Hanover Police how he tried to revive Joshua using a doll with both hands out forward and moving. (Def. 56.1, ¶16). Sergeant Lussky had requested that both Rick and Barbara Aleman, who had arrived after leaving her place of work, come with her to the police station for questioning in a more controlled environment. (Def. 56.1, ¶¶18; 38). Prior to leaving Aleman's home, Officer Lussky was informed by Detective Carlson that treating doctors believed that Joshua Schrik was a suspected victim of shaken baby syndrome. (Def. 56.1, ¶¶37; 62). Plaintiff consented to being transported to the police station and admitted that he had not been placed under arrest at this time. (Def. 56.1, ¶¶18-19). He was not handcuffed prior to being transported. (Def. 56.1, ¶20).

Upon arrival at the Hanover Park Police Station, both Mr. and Mrs. Aleman were placed in the same interview room which was equipped with video/audio recording equipment that Sergeant Lussky later activated. (Def. 56.1, ¶39). She believed this was a possible homicide investigation as she had been informed by Detective Carlson that it was suspected that Joshua Schrik was not going to live (Def. 56.1, ¶41). While in the interview room, no member of the Hanover Park Police Department ever told him that he was under arrest. (Def. 56.1, ¶21). Prior to questioning, Aleman was given multiple opportunities to

3

contact his attorney. (Def. 56.1, ¶22). Later that same day, Illinois State Police Master Sergeant Joseph Micci and Hanover Park Detective Eric Villanueva were present to initiate questioning of the Plaintiff. (Def. 56.1, ¶45).

Prior to questioning, the Plaintiff was presented with a Miranda waiver form to review and sign. (Def. 56.1, ¶23). Plaintiff spoke with his attorney on three (3) occasions before voluntarily signing the Miranda waiver form. (Def. 56.1, ¶¶24-25). Villanueva spoke with Aleman's attorney who had wanted to speak with him. (Def. 56.1, ¶48). Aleman was never denied any request to make a phone call to his attorney prior to signing the Miranda waiver. (Def. 56.1, ¶26). After Aleman signed the Miranda waiver, Detective Villanueva signed as a witness. (Def. 56.1, ¶49). On that day, Aleman never again asked to speak to his attorney after signing the Miranda form. (Def. 56.1, ¶50). Plaintiff was advised that the questioning was being videotaped. (Def. 56.1, ¶28).

During the interview, Aleman was provided a plastic baby to demonstrate both to Master Sergeant Micci and Villanueva how he handled Joshua Schrik after he became unresponsive. (Def. 56.1, ¶29). During the interview, Aleman admitted to Micci and Villanueva that he shook the baby too hard, but that he did not mean it. (Def. 56.1, ¶¶30; 53).

At approximately 10:00 PM on September 9, 2005, after making several admissions regarding his mishandling of Joshua Schrik (i.e. shook him too hard), Master Sergeant Joseph Micci advised the Plaintiff that he was under arrest. (Def. 56.1, ¶31).

On September 10, 2005, the Plaintiff admitted that he "did the wrong thing" and felt terrible about what had happened the day before. (Def. 56.1, ¶32). Once he requested that his attorney be present for additional questioning and that he would no longer answer questions, the interview terminated. (Def. 56.1, ¶33).

On September 11, 2005, Detective Villanueva signed the criminal complaint for Aggravated Battery to a Child. (Def. 56.1, ¶55-6).

On September 12, 2005, a bond hearing was conducted before Judge Karen Thompson Tobin where an express finding of probable cause to detain was made and bond was set at $250,000. (Def. 56.1, ¶34).

On September 13, 2005, Joshua Schrik was pronounced dead. (Def. 56.1, ¶68).

On September 14, 2005, Defendants Carlson and Villanueva attended the autopsy conducted by Dr. Nancy Jones. (Def. 56.1, ¶¶69; 100). She opined that the manner of death was consistent with homicide and that the death was ascribed to subdural hematoma due to blunt head trauma. (Def. 56.1, ¶¶101-102). She informed Detective Carlson that the injuries were sustained on September 9, 2005. (Def. 56.1, ¶70, 107). On the same day, Dr. Jones spoke with Assistant State's Attorney Lance Northcutt of the Felony Review Division regarding her findings. (Def. 56.1, ¶71).

On September 15, 2005, after obtaining approval from the Cook County States Attorney's Felony Review Division, Detective Carlson signed a criminal complaint against Rick Aleman for the murder of Joshua Schrik. (Def. 56.1, ¶72).

That same day, Aleman and his attorney arrived at the Hanover Park Police Station where he was placed under arrest. (Def. 56.1, ¶73). A bond hearing was conducted later that day where Judge Thomas Fecarotta, Jr. made an express finding of probable cause to detain and bond was set at $1.5 million dollars. (Def. 56.1, ¶74).

On September 22, 2005, Carl Gutman, a parent of one of the children that Plaintiff cared for and a pre-occurrence witness, testified before a grand jury. (Def. 56.1, ¶111).

On October 6, 2005, Adam Michalik, also a parent of one of Aleman's clients and a pre-occurrence witness, testified before a grand jury. (Def. 56.1, ¶112).

As result of the testimony and evidence presented, an October 2005 Grand Jury of the Circuit Court of Cook County indicted the Plaintiff on two (2) counts of First Degree Murder. (Def. 56.1, ¶113)

## **STANDARD OF REVIEW**

Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact as a matter of law. F.R.C.P. 56(c). Celotex Corp v. Catrett, 477 U.S. 317 (1986). In determining whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party, and draws all reasonable and justifiable inferences in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

## ARGUMENT

**I.  BASED UPON THE TOTALITY OF CIRCUMSTANCES, PROBABLE CAUSE EXISTED TO ARREST RICK ALEMAN**

It is well-established that the existence of probable cause to arrest precludes a Section 1983 false arrest claim. See Brooks v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006)("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution). Probable cause is an objective concept that relies on the common-sense judgment of police officers based on the totality of the circumstances. See Deng v. Sears, Roebuck, & Co. 552 F.3d 574, 557 (7th Cir. 2009); United States v. Hobbs, 509 F.3d 353, 359-60 (7th Cir. 2007). To have probable cause for an arrest, "law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge ***at the time of the arrest***, that the suspect had committed or was committing an offense." United States v. Hayes, 236 F.3d 891, 894 (7th Cir., 2001)(emphasis added); see also Illinois v. Gates, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317 (1983)("probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.")

Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." United States v. Sawyer, 224 F.3d 675, 679 (7th Cir. 2000)(explaining that there must be a "probability or substantial chance of criminal activity on the suspect's part"). In determining whether an officer had probable cause, the court steps into the shoes of a reasonable person in the

7

position of the office. <u>Mustafa v. City of Chicago</u>, 442 F.3d 544, 547 (7th Cir.

2006). This circuit has evaluated probable cause "not on the facts as an

omniscient observer would perceive them, but rather as they would have

appeared to a reasonable person in the position of the arresting officer." <u>Id</u>.

(quoting <u>Kelley v. Myler</u>, 149 F.3d 641, 646 (7th Cir. 2000)).

Counts I and III allege "False Arrest/Imprisonment" for the September 9,

2005 and September 15, 2005 arrests, respectively. The legality of each arrest

will be addressed separately:

### A.    Arrest for Aggravated Battery to a Child (September 9, 2005)

On September 9, 2005, Plaintiff first spoke with law enforcement

personnel at his home. (Def. 56.1, ¶17). He demonstrated to law enforcement

personnel how he attempted to resuscitate Joshua after he became

unresponsive by demonstrating with a plastic doll. (Def. 56.1, ¶16). He agreed to

be transported to the Hanover Park Police Department ("HPPD") where he could

be questioned in a more controlled environment. (Def. 56.1, ¶18; 38). He

admitted that he was not under arrest at the time of being taken to the police

station. (Def. 56.1, ¶19). At this time, Sergeant Lussky was receiving updates

from Detective Carlson regarding Johsua Schrik's condition. (Def. 56.1, ¶37).

Joshua Schrik's treating physicians' initial diagnoses were that the injuries were

consistent with shaken baby syndrome. (Def. 56.1, ¶¶37; 62; 84-85).

Mr. Aleman was placed into an interview room at HPPD and although he

was never told that he was under arrest, he clearly understood why he was being

detained. (Def. 56.1, ¶19; Exhibit 1, DVD #1 - 15:19:45-15:19:55). Upon the

arrival of Master Sergeant Joseph Micci of the Illinois State Police Child Victimization Unit, Aleman was presented with a <u>Miranda</u> waiver form which he discussed with his attorney and ultimately signed. (Def. 56.1, ¶22-26).

During the interview, the Plaintiff demonstrated how he tried to revive Joshua again by utilizing a plastic doll. (Def. 56.1, ¶29). He admitted to both Master Sergeant Micci and Officer Vilanueva that he shook the baby too hard, but that he did not mean it. (Def. 56.1, ¶¶30, 53). Shortly after this demonstration ended and after Aleman confessed to his mishandling of Joshua, Sergeant Micci informed Aleman that he was under arrest. (Def. 56.1, ¶31).

Based upon the totality of the circumstances described above and the information then known to the investigating officers, it is evident that probable cause existed to detain and subsequently place Rick Aleman under arrest. The investigating officers had information that indicated that Aleman was the last adult to have custody and control of the child; Joshua Schrik was exhibiting signs of shaken baby syndrome as confirmed by medical doctors; and Rick Aleman violently demonstrated how he tried to resuscitate Joshua utilizing a plastic doll while admitting that he shook Joshua too hard. (Def. 56.1, ¶¶30, 53).

Collectively, this information led to the arrest of the Plaintiff on charges for Aggravated Battery to A Child – a charge necessarily approved by the Felony Review Division. In further support of the legality of the arrest, on September 12, 2005, Judge Tobin made an express finding of probable cause to detain on the charge of aggravated battery to a child. (Def. 56.1, ¶46).

**B.      Arrest for First Degree Murder (September 15, 2005)**

On September 13, 2005, Joshua Schrik was pronounced dead. (Def. 56.1, ¶68). The following morning, Detective Todd Carlson, Officer Villanueva and an evidence technician arrived at the Cook County Medical Examiner's Office to attend the autopsy that was to be performed by then Assistant Medical Examiner Nancy Jones. (Def. 56.1, ¶69). Dr. Jones' opinion regarding the cause of death was subdural hematoma due to blunt head trauma. (Def. 56.1, ¶102). Her opinion as to manner of death was homicide. (Def. 56.1, ¶101). These two opinions, both set forth in her post-mortem report, have not been amended as of the date of her deposition. (Def. 56.1, ¶103). She informed law enforcement personnel who were in attendance of her opinions and per Carlson's request, wrote them down on a piece of paper. (Def. 56.1, ¶110, Exhibit 4 to her deposition). Dr. Jones informed Detective Carlson that the injuries sustained by Joshua occurred on September 9, 2005. (Def. 56.1, ¶86; 107). On the date of the autopsy, Dr. Jones also spoke with an Assistant State's Attorney from the Felony Review Division. (See Def. 56.1, ¶71). Once the Felony Review Division approved the charge, Detective Carlson signed the complaint against the Plaintiff for first degree murder of Joshua Schrik. (Def. 56.1, ¶72). On September 15, 2005, the Plaintiff, while accompanied by his attorney, was placed under arrest for first degree murder. (Def. 56.1, ¶73). On the same day, the Plaintiff presented before Judge Fecarotta, Jr., who found probable cause to detain Aleman on charges of first-degree murder. (Def. 56.1, ¶74)(See also transcript of proceedings – Exhibit 3).

10

Again, when examining the legality of an arrest, the inquiry is whether at the time of the arrest, there is a "probability or substantial chance of criminal activity on the suspect's part", not whether there is "evidence sufficient to support a conviction or even evidence demonstrating that it is more likely than not that the suspect committed the crime." United States v. Sawyer, cited *supra*. At the time of the arrest, Detective Carlson possessed the following information:

- Medical Examiner's opinion that the manner of death was consistent with homicide (Def. 56.1, ¶115);

- Medical Examiner's opinion that the cause of death was subdural hematoma due to blunt head trauma (Def. 56.1, ¶116) ;

- Medical Examiner's opinion that the injuries were sustained on September 9, 2005 (Def. 56.1, ¶121);

- That the onset of injuries sustained by Joshua were immediate (Def. 56.1, ¶67)

- That the Plaintiff admitted to having shaken the baby too hard and demonstrated the same with a plastic doll in front of officers. (Def. 56.1, ¶¶30, 53)

In further support of their assertion regarding the legality of these arrests, the Defendants urge the Court to "step into the shoes of a reasonable person in the position of the office" as the Seventh Circuit suggests in Mustafa vs. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). Officers Carlson, Lussky and Villanueva were being supplied with a continual flow of incriminating information suggestive of the Plaintiff's role in the untimely and tragic death of Joshua Schrik.

The arresting officers need not prove their case at the time of arrest. Indeed, all that is required for probable cause is a "probability or substantial chance of criminal activity on the suspect's part." U.S. v. Sawyer, cited *supra*.

11

Clearly, given all of the above referenced material developments into this evolving investigation, the arresting officers "reasonably believed" that Rick Aleman had committed the offenses for which he was charged.

Based upon all of the above-cited reasons, the Defendants ask that this Court make an express finding that probable cause existed to detain and later arrest the Plaintiff on September 9, 2005 for Aggravated Battery to a Child. The Defendants also ask that this Court similarly find that probable cause existed to arrest the Plaintiff on September 15, 2005 for First Degree Murder of Joshua Schrik. Should this Court so find, Plaintiff's Counts I and III must fail as a matter of law.

**C.      Even if there was no probable cause to arrest, the Defendants are nevertheless entitled to qualified immunity**

The issue of qualified immunity - whether a reasonable officer could have believed that he had probable cause—is usually decided by the court before trial. Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed. 589 (1991) (holding that officers are protected by qualified immunity where they possessed trustworthy, but ultimately incorrect evidence, that a suspect planned to assassinate the President). Even if probable cause is lacking with respect to an arrest, the arresting officer is entitled to immunity so long as his belief that he had probable cause was "objectively reasonable." See Id. at 227, 112 S.Ct. 534; Edwards v. Cabrera, 58 F.3d 290, 293 (7th Cir. 1995). However, the qualified immunity doctrine does not protect those who act unreasonably or "who knowingly violate the law." Hunter, 502 U.S. at 228, 112 S.Ct. 534.

Applying the above principles to the facts and circumstances of this matter, there is nothing to suggest that Officers Carlson, Villanueva or Lussky knowingly violated the law. Their belief that they had probable cause to arrest the Plaintiff was objectively reasonable under the circumstances.

Even if probable cause was lacking as to either of the two (2) arrests, the U.S. Supreme Court has held that police officers are nevertheless entitled to qualified immunity because their belief as to whether they had probable cause to arrest can still be objectively reasonable. If this Court were to find that probable cause was lacking for either or both arrests, the Defendants urge the Court to find that the officers are nevertheless entitled to qualified immunity as their belief that they had probable cause was objectively reasonable. Should this Court so find, the Defendants request dismiss Counts I and III on the grounds of qualified immunity.

## II. THERE CAN BE NO FAILURE TO INTERVENE IF THE ARRESTS WERE SUPPORTED BY PROBABLE CAUSE

An officer who fails to prevent other law enforcement officers from violating the constitutional rights of citizens can be held liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." Chavez v. Ill. State Police, 251 F.3d 612, 652 (7th Cir.2001).

Plaintiff's Count II seeks relief for only the September 9, 2005 arrest. If the Court were to find the existence of probable cause and/or qualified immunity stemming from that arrest, then Plaintiff's Count II must necessarily fail as a matter of law. Accordingly, the Defendants request that the Court dismiss Count II and find that no genuine issue of material fact exists as to an alleged failure to intervene to prevent a false arrest/imprisonment from occurring.

### III. THERE IS NO EVIDENCE OF A CIVIL CONSPIRACY TO DEPRIVE THE PLAINTIFF OF HIS CONSITUTIONAL RIGHTS

In order to prevail on a conspiracy claim brought under 42 U.S.C. §1983, a plaintiff must prove: (1) an express or implied agreement among defendants to deprive him of his constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir.1988); see also Fries v. Helsper, 146 F.3d 452, 457 (7th Cir.1998). Although a conspiracy may be demonstrated by circumstantial evidence, "mere conjecture" of a conspiracy is not sufficient to avoid summary judgment – there must be facts suggesting a "meeting of the minds." Amundsen v. Chicago Park Dist., 218 F.3d 712, 718 (7th Cir.2000) ("bald assertions without any evidentiary support" failed to demonstrate a conspiracy); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir.1999) (assertions based on mere speculation or conjecture do not withstand summary judgment).

The instant Plaintiff has brought a civil conspiracy claims under both 42 U.S.C. §1983 and state law. (Counts IV and VIII, respectively). Count IV contains allegations that the Defendants had a common plan to cover up the false arrest of Plaintiff, make false and incomplete official reports and give false

14

and incomplete versions of events to "other persons." (Plaintiff's First Amended
Complaint, pg. 6, ¶¶56-8). Those bald assertions are nothing more than that.
There is no evidence to suggest an express or implied agreement to deprive
Aleman of his constitutional rights. Rather, there is an abundance of evidence
indicative of a thorough and well-documented investigation into a tragic event.
The initial questioning of the Plaintiff, all captured on video, only began after the
Plaintiff signed a <u>Miranda</u> waiver and agreed to answer questions. As a result of
certain admissions made by the Plaintiff during the interview and when
connected to medical diagnoses reached by Joshua Schrik's treating physicians,
i.e. evidence of shaken baby syndrome, Plaintiff was charged with Aggravated
Battery to a Child. Detective Carlson and Detective Villanueva met with the
Medical Examiner following the death of Joshua Schrik. Dr. Jones opinions were
manner of death as homicide as the result of subdural hematoma due to blunt
trauma to the head. (Def. 56.1, ¶¶115-116). Those opinions led to the approval of
charges for First Degree Murder. (Def. 56.1, ¶88). She had no reason to believe
that the officers present were not being truthful in conveying information to her.
(Def. 56.1, ¶108). There is nothing to suggest that the Defendant-officers
reached an express or implied agreement to deprive Aleman of his rights.

Given all of the above, it is clear that Plaintiff's conspiracy claim is nothing
more than an exercise in conjecture wholly insufficient to withstand a Motion for
Summary Judgment. Every aspect of this investigation was documented by the
HPPD whether via video or written reports. Further, it is difficult to reconcile how
the Defendant-officers conspired against this Plaintiff when an indictment for First

Degree Murder of the Plaintiff was secured through grand jury testimony offered by the Plaintiff's own witnesses. (Def. 56.1, ¶¶111-112).

The Plaintiff has failed adduce evidence sufficient to withstand summary judgment as to the existence of a civil conspiracy. Accordingly, the Defendants respectfully request that this Court dismiss Plaintiff's Counts IV and VIII.

**IV. THERE IS NO "ILLEGAL INTERROGATION" AFTER PLAINTIFF WAS ADVISED OF HIS *MIRANDA* RIGHTS, CONFERRED WITH HIS ATTORNEY AND SIGNED A *MIRANDA* WAIVER AGAINST HIS COUNSEL'S ADVICE**

Count V, directed, in part, against Detective Villanueva, seeks recovery for the alleged illegal interrogation that violated his substantive due process rights guaranteed under the 14th Amendment. On its face, this claim is framed as an alleged violation of Miranda v. Arizona, 384 U.S. 436 (1966). A suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and this right must be explained before questioning begins. Davis v. United States, 512 U.S. 452, 457 (1994). A suspect who invokes his right is free to change his mind and volunteer whatever information he chooses. Miranda, 384 U.S. 436, 478. With that backdrop in mind, there is overwhelming evidence indicative of Officer Villanueva's compliance with the well-established principles set forth in Miranda and its progeny.

Formal questioning of the Plaintiff began *after* he was orally advised of his Miranda rights (by Master Sergeant Micci) and *after* he signed a Miranda waiver form which was counter-signed by Villanueva. (Def. 56.1, ¶¶23, 49). Aleman spoke with his personal attorney on at least three (3) occasions prior to formal

16

questioning. (Def. 56.1, ¶¶22, 25). He was never denied a request to make a phone call to his attorney by members of the Hanover Park Police Department. (Def. 56.1, ¶26). In fact, Aleman's attorney asked to speak with Detective Villanueva on the phone. (Def. 56.1, ¶48). Aleman was orally advised by Sergeant Micci that the interview was being videotaped. (Def. 56.1, ¶28). Aleman recalled the Detective Villanueva may have asked one question during the interview, but Investigator Micci was asking all of the questions. (Def. 56.1, ¶27).

On the morning of September 10, 2005, the Plaintiff was again advised of his <u>Miranda</u> rights and when he asked to have his attorney present for any further questioning, the interview promptly terminated. (Def. 56.1, ¶33).

It is evident that that the investigating officers followed the tenets of <u>Miranda</u> with this suspect. The Plaintiff not only signed a <u>Miranda</u> waiver and was given verbal <u>Miranda</u> warnings, but was given multiple opportunities to consult with his attorney prior to questioning. This was all captured on video where the Plaintiff invoked his right to speak with an attorney and after being afforded that right, expressly waived that right and agreed to answer questions in his attorney's absence. The following day, perhaps after having an evening to realize that he had made some incriminating admissions the day before, the Plaintiff invoked his right to have an attorney present and the interview terminated. (Def. 56.1, ¶33).

Officer Villanueva is entitled to summary judgment on Plaintiff's Count V insofar that he did not violate the Plaintiff's Fifth Amendment right to silence or to

counsel. Accordingly, the Defendant, OFFICER ERIC VILLANUEVA, requests

Summary Judgment on Plaintiff's Count V for illegal interrogation.

### V. PLAINTIFF'S COUNTS VI and VII FOR MALICIOUS PROSECUTION MUST FAIL AS PROBABLE CAUSE EXISTED TO PROSECUTE ALEMAN AND THERE IS NO EVIDENCE OF MALICE

Plaintiff's Counts VI and VII allege state-law malicious prosecution against

Defendants, VILLANUEVA and CARLSON, respectively. Detective Villanueva

brought the original criminal complaint for aggravated battery to a child. (Def.

56.1, ¶¶55-56). That charge was ultimately superseded by the First Degree

Murder charge brought by Detective Carlson. (Def. 56.1, ¶72).

To succeed on a claim of malicious prosecution, a plaintiff must establish

all five elements: (1) the commencement or continuation of an original criminal or

civil judicial proceeding by the defendant; (2) the termination of the proceeding in

favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4)

malice; (5) damages. Meerbrey v. Marshall Field & Company, 139 Ill.2d 455, 564

N.E.2d 1222 (Ill. 1990). The failure to establish any one of these elements

precludes recovery for malicious prosecution. Washington v. Summerville, 127

F.3d 552, 557 (7th Cir. 1997).

In the context of a malicious prosecution case, probable cause is defined

as "a state of facts that would lead a person of ordinary care and prudence to

believe or to entertain an honest and sound suspicion that the accused

committed the offense charged." Adams v. Sussman & Hertzberg, Ltd., 292

Ill.App.3d 30, 43, 684 N.E.2d 935 (Ill. App. 1 Dist., 1997). It is the state of mind of

the person commencing the prosecution that is at issue - not the actual facts of the case or the guilt or innocence of the accused. Johnson v. Target Stores, Inc., 341 Ill.App.3d 56, 72, 274 Ill.Dec. 795, 791 N.E.2d 1206 (2003).

Police officers "often take the first step toward prosecution when they make the arrest." Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996). Where there is an indictment, a police officer can only be held liable if he pressured, influenced, or made a knowing misstatement to the prosecutors. Id. In order to prove malicious prosecution against arresting officers, a plaintiff must demonstrate that "the officers committed some improper act after they arrested him without probable cause, for example, they pressured of influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 901 (7th Cir. 2001), see also, Reed at 1053-54. Where the alleged concealment or fabrication played no role in the initiation and continuation of Plaintiff's prosecution, summary judgment must be granted for the Defendants. Cervantes v. Jones, 23 F.Supp.2d 885, 881-91 (N.D. Ill. 1998).

In the matter of Sang Ken Kim v. City of Chicago, 368 Ill.App.3d 648, 858 N.E.2d 569 (1st Dist. 2006), the plaintiff was accused of contributing to the death of a baby that had died shortly after his girlfriend gave birth. Id. at 650. Chicago Police detectives interviewed treating physicians, one of whom indicated that she could not confirm that trauma caused the baby's eventual demise. Id. at 651. The plaintiff was called in for questioning and admitted that he had pushed the mother

who fell to the floor. Id. at 651. Shortly thereafter, Dr. Nancy Jones[1] performed an autopsy on the child and found that the child died as a result of blunt abdominal trauma and listed the matter of death as homicide. Id. at 651-2. The plaintiff was interviewed by an Assistant State's Attorney on two occasions and ultimately, first degree murder charges were brought against the plaintiff. Id. Plaintiff was subsequently indicted by a Cook County Grand Jury. Ultimately, criminal charges were dropped after the mother recanted portions of her story. Id. at 653.

In affirming the trial court's granting of summary judgment as to plaintiff's Counts I and III for malicious prosecution, the First District Appellate Court found that based upon the totality of circumstances, all of which were known to the detectives at the time of arrest, the detectives held an objectively reasonable belief that the plaintiff had committed murder. Aboufariss v. City of DeKalb, 305 Ill.App.3d 1054, 1062, 713 N.E.2d 804 (1999)(in a malicious prosecution case, summary judgment was proper on question of probable cause where defendants held an objectively reasonable belief that plaintiff had committed a crime). Plaintiff's argument that the defendants failed to interview all potentially relevant witnesses before determining probable cause exists was expressly rejected. When making a determination regarding the existence of probable cause, courts must be guided by common sense and practical considerations. People v. Harris, 352 Ill.App.3d 63, 66-67, 815 N.E.2d 863 (2004). Just as the police are not required to verify the correctness of each item of information they obtain (Johnson, 341 Ill.App.3d at 72, 791 N.E.2d 1206, quoting Turner v. City of

---

[1] Coincidentally, Dr. Nancy Jones performed the autopsy of the deceased child in this case as well. She listed the manner of death of Joshua Schrik as homicide and cause of death as subdural hematoma due to blunt head trauma. (Def. 56.1, ¶¶115-116).

Chicago, 91 Ill.App.3d 931, 415 N.E.2d 481 (1980)), the Sang Ken Kim court concluded that it would be impractical and contrary to common sense to require the police to follow all possible leads in the course of an investigation to establish probable cause. Id. at 658.

Much like the situation in Sang Ken Kim, damaging admissions made by Rick Aleman and corroborating information obtained from treating physicians collectively led to criminal charges being brought against him. After Joshua Schrik died and after obtaining written opinions from the Medical Examiner, Detective Carlson obtained approval from Felony Review to bring charges for First Degree Murder. This fact pattern is substantially similar to what occurred in Sang Ken Kim.

In further support of dismissal, the Plaintiff was indicted for First Degree Murder by a grand jury. (Def. 56.1, ¶113). Two of the Plaintiff's friends, Adam Michalik and Carl Gutman, each testified before the grand jury. (Def. 56.1, ¶¶111-112). In spite of their testimony, which was purportedly exculpatory, the Grand Jury nevertheless returned an indictment for First Degree Murder. We know that where there is an indictment, a plaintiff must show that the police officer pressured, influenced, or made a knowing misstatement to the prosecutors. Reed at 1053. There is no absolutely evidence to suggest that Detective Carlson or Detective Villanueva committed such misconduct. Certainly, the issuance of an indictment supports the Defendants contention that the evidence adduced at the time supported the defendant's belief that probable cause existed to make the arrest, supra.

21

Even if the Court were to find that probable cause did not exist, the Plaintiff must also demonstrate malice on the part of Detectives Carlson and Villanueva. Malice is present when a prosecution is initiated for any reason other than to bring a party to justice. <u>Turner</u> at 937. Here there is nothing to suggest that either officer brought these charges for any reason other than to bring Mr. Aleman to justice. Neither detective "had it out" for Mr. Aleman, a complete stranger to them prior to this occurrence. In short, if the Plaintiff cannot prove all five elements of malicious prosecution, the claim cannot stand.

Finally, there is no evidence to suggest that the Defendants engaged in willful and wanton misconduct per Section 2-202 of the Tort Immunity Act, which provides that "a public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct" (745 ILCS 10/2-202) and that "a local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. For the same reasons that it cannot be considered malicious, the Defendants conduct was not "willful and wanton."

The Plaintiff cannot establish all of the elements of malicious prosecution and the Defendants, Detective Carlson, Detective Villanueva and the Village of Hanover Park, as their employer, are entitled to statutory immunity. Accordingly, the Defendants request summary judgment as to Counts VI and VII.

**VI. PLAINTIFF'S STATE LAW CLAIMS FOR CONSPIRACY AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS SET FORTH IN 745 ILCS 10/8-101[2]**

---

[2] Defendants are not seeking dismissal of Plaintiff's malicious prosecution claims (Counts VI-VII) under section 745 ILCS 10/8-101.

The statute of limitations applicable to claims under 42 U.S.C. §1983 in Illinois is the same two-year provision which governs personal injury actions in the state, 735 ILCS 5/13-202. <u>Williams v. Lampe</u>, 399 F.3d 867, 869-70 (7th Cir. 2005). However, the limitation for state-law tort claims, such as conspiracy and intentional infliction of emotional distress, against governmental entities and their employees is only one  year pursuant to 745 ILCS 10/8-101. <u>Id</u>. Under Illinois law, the default rule is that "a cause of action for personal injuries accrues when the plaintiff suffers injury." <u>Golla v. General Motors Corp.</u>, 167 Ill.2d 353, 360, 212 Ill.Dec. 549, 657 N.E.2d 894 (Ill.1995).

In this instance, the statute of limitations for the Plaintiff's state law claims for civil conspiracy (Count VIII) and intentional infliction of emotional distress (Count IX) accrued on **September 9, 2005** – the same day that he was detained and placed under arrest. Plaintiff did not file this federal action until **September 7, 2007** which is more than one year beyond the applicable statute of limitations for state-law claims. Because the Plaintiff is claiming injuries sustained as a result of the Defendants' actions on September 9, 2005, his state-law claims for conspiracy and intentional infliction of emotional distress are untimely.

Accordingly, the Defendants request that the Court dismiss Plaintiff's Counts VIII and IX on the grounds that they were filed beyond the applicable statute of limitations set forth in 745 ILCS 10/8-101.

**CONCLUSION**

The death of Joshua Schrik was a tragic event for everyone involved in this investigation. From the outset, Officers Lussky, Carlson and Villanueva were receiving and processing information suggesting not only that Joshua Schrik was the victim of shaken baby syndrome, but that the Plaintiff, Rick Aleman, was responsible for the injuries sustained. The officers need not prove their case at the time of arrest. After considering what they knew at the time of the arrest, there can be no doubt that, at a minimum, Rick Aleman may have committed Aggravated Battery to a Child. Once Joshua Schrik was pronounced dead, Officer Carlson received information from treating physicians, including the Medical Examiner, that the manner of death was homicide. Again acting upon what was known to him at the time of the arrest, Officer Carlson obtained approval from Felony Review to upgrade charges to First Degree Murder. An indictment for First Degree Murder was subsequently secured after two fathers of Aleman's clients testified before a Grand Jury. If probable cause is determined to exist for both arrests, Plaintiff's failure to intervene count must necessarily fail. Further, Plaintiff's federal/state counts for conspiracy must similarly fail as there is no evidence of a meeting of the minds to violate his constitutional rights. There can be no illegal interrogation after the Plaintiff waived his Miranda rights after conferring with his attorney and opting to answer questions against his attorney's advice. Plaintiff's claim for malicious prosecution must fail as probable cause existed and there is no evidence of malice/willful and wanton. Finally, Plaintiff's state law claims for conspiracy and intentional infliction of emotional distress are

24

time-barred by 745 ILCS 10/8-101. The Defendants respectfully request that the Court dismiss all counts directed against them with prejudice for one or all of the reasons stated herein.

**WHEREFORE**, the Defendants, VILLAGE OF HANOVER PARK, OFFICER CAROL LUSSKY, OFFICER TODD CARLSON and OFFICER ERIC VILLANUEVA respectfully request that the Court grant their Motion for Summary Judgment.

Respectfully Submitted,

/s/ Michael R. Hartigan
One of the Attorneys for the
Defendants, Village of Hanover
Park, Officer Carol Lussky, Eric
Villanueva and Todd Carlson

HARTIGAN & O'CONNOR, P.C.
Russell W. Hartigan
Patrick H. O'Connor
Michael R. Hartigan
20 N. Clark Street #1250
Chicago, IL  60602
(312)201-8880
(312)201-8905 (F)