07-30-4820 (RWH/MRH)                                              ARDC No. 06272355

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICK ALEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   07 C 5049 |
| ) | |
| VILLAGE OF HANOVER PARK; et al. ) | Judge Bucklo |
| ) | |
| Defendants. ) | Magistrate Judge Denlow |

## JOINT RESPONSE TO PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT (COUNT V)

NOW COME the Defendants, VILLAGE OF HANOVER PARK, a municipal corporation, OFFICER TODD CARLSON, OFFICER ERIC VILLANUEVA and OFFICER CAROL LUSSKY, by and through their attorneys, Hartigan & O'Connor, P.C., and MASTER SERGEANT JOSEPH MICCI and MASTER SERGEANT GERARD FALLON, by and through their attorney, LISA MADIGAN, Attorney General of Illinois, as their Joint Response to Plaintiff's Motion for Partial Summary Judgment (Count V), state:

### INTRODUCTION

Plaintiff, RICK ALEMAN, is a convicted felon who was operating an unlicensed day-care center out of his home on the date of the occurrence leading to his arrest. Based on Aleman's own statements to investigators as well as testimony in this case, a baby in his care, Joshua Schrik, was dropped off by his mother at Plaintiff's day-care center on Friday, September 9, 2005, and by his actions – crying, standing, looking around, showed that he was conscious and responsive.  Approximately a half-hour after being dropped off that morning and after Aleman admittedly shook the baby in a panic, the baby was taken to a hospital by EMTs in a non-responsive state and in cardiac arrest.  Aleman was transported to the Hanover Park Police Station and, following

multiple conversations with his attorney, Paul Ankin, Aleman chose to waive his right to counsel, and to speak with Illinois State Police Master Sergeant Joseph Micci and Hanover Park Police Officer Eric Villanueva about what had occurred that morning at his day-care center. As shown on the DVD video, Aleman specifically told Sgt. Micci and Officer Villanueva that his lawyer had told him "to go ahead" and speak with them and that Aleman was willing to do that. See Defendants' LR 56.1(b)(3)(C) Statement of Additional Material Facts, ¶¶ 70-72 (citing Plaintiff's Exhibit 2, DVD #2 – 17:49:08 – 17:49:44). Sgt. Micci confirmed that Aleman was going to waive his right to have an attorney present and to voluntarily submit to questioning after Aleman returned to the interrogation room following a telephone conversation with his attorney:

 Sgt. Micci: Okay. Where we at?

 Aleman: Um, I, you know, I talked to a lawyer and you know, I, you know, I tried to talk him into doing it, you know, and, you know, he, he's telling me to go ahead, you know, he's….

 Sgt. Micci: He said go ahead?

 Aleman: Yeah, you know. I mean, I really don't have a problem doing it … I just…. You know he said … ahhh … so I just, I followed…

 Sgt. Micci: So he said go ahead, then do it, then?

 Aleman: I can do it, yeah.

(Id., ¶¶ 70-72.)

Aleman signed the Miranda waiver form. Id., ¶ 73. Aleman then answered questions posed to him by Sgt. Micci and Officer Villanueva. Aleman's answers, his violent demonstration of how he tried to revive an unresponsive infant using a plastic doll and corroborating information obtained from treating medical doctors, all led to his arrest and charges for aggravated battery to a child and later, when Joshua Schrik died, for first-degree murder. A review of the DVD video of Aleman's interrogation, which has

been submitted to chambers, leaves no doubt that Aleman's decision to submit to questioning was voluntary, that his waiver was knowing, and that police had reasonable grounds to arrest Aleman following his interrogation.

To distract the Court's attention from these plain facts, Plaintiff's motion brief relies on several "facts" that either have no evidentiary support or that are mischaracterizations of what actually occurred.

First, Plaintiff's counsel attempts to create an impression that Joshua's mother was the more likely suspect and thus to portray Aleman as a deserving civil plaintiff. In Plaintiff's response brief, but without any citation to evidence, counsel makes the following baseless statements:

- "Numerous pieces of evidence show that the baby was probably sick due to being beaten by his mother, a very violent person." (Pl's Memo. [Doc. 123], p. 1.)

- "There was voluminous evidence that the child's mother, Danielle Schrik, should have been the chief suspect in the death of her son." (Doc. 123, p. 2.)

- "Once the Defendants decided to target Plaintiff, they deliberately ignored, disregarded, and even covered-up the evidence that pointed to Danielle Schrik." (Doc. 123, p. 2.)

No evidence is offered for these statements. In fact, it is undisputed that the Cook County State's Attorney's Office never charged the mother. Moreover, whether the mother was a viable suspect is irrelevant to the lawfulness of Aleman's interrogation.

Second, Plaintiff's counsel attempts to create the impression that the circumstances of Aleman's custodial detention at the Hanover Park Police station were unconstitutional. Counsel seeks to do this by suggesting that the police were secretly listening to Aleman's telephone conversations with his attorney.

- "Plaintiff's telephone conversation with his lawyer was also recorded on the Hanover Park police station audio and video surveillance equipment." (Doc. 123, p. 3.)

3

- "Once again, Plaintiff was not allowed to speak to his lawyer in confidence – this [second] conversation also was recorded on Hanover Park police station surveillance equipment." (Doc. 123, p. 3.)

In fact, as the DVD video shows, the audio-visual recording was of the interrogation room. Because Aleman used a telephone near to the interrogation room, Aleman's voice at times is audible from outside the interrogation room. There is, however, no evidence that the Defendants or other members of the Hanover Park Police Department were secretly listening to Aleman or were able to hear anything that his attorney was saying by means of this recording equipment.

Third, counsel suggests that Aleman was subjected to interrogation prior to the point in time – a little after 5:49 p.m. – when he knowingly waived his Miranda rights and agreed to answer questions. Counsel does this by repeatedly describing the initial conversations between Aleman and Sgt. Micci and Officer Villanueva as "questioning":

- "After this first request for counsel, Defendants did not stop questioning Plaintiff." (Doc. 123, p. 2.)

- "After this second request for counsel, Defendants still did not stop questioning Plaintiff." (Doc. 123, p. 3.)

- "After this third request for counsel, Defendants still did not stop questioning Plaintiff." (Doc. 123, p. 3.)

- "At 5:49, Micci and Villanueva started questioning Plaintiff again." (Doc. 123, p. 3.)

In fact, as the DVD video confirms, Sgt. Micci and Officer Villanueva never engaged in substantive questioning of Aleman prior to the time that Aleman clearly indicated that he would speak with the police and after he knowingly signed the Miranda waiver. See, e.g., Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (holding that term "interrogation" under Miranda refers to questioning or other actions on part of police "reasonably likely to elicit an incriminating response from the suspect").

In addition to mischaracterizing the facts, Plaintiff's counsel also misconstrues the governing law, as noted below.

## ARGUMENT

In his motion memorandum [Doc. 123], Plaintiff argues that his case is controlled by <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981), <u>Minnick v. Mississippi</u>, 498 U.S. 146 (1990), and similar cases, where a suspect invokes his right to counsel. But these cases did not involve any explicit waiver by a suspect of his <u>Miranda</u> rights, especially where as in Aleman's case, he had ample opportunities to confer with an attorney prior to executing a <u>Miranda</u> wavier form and submitting himself to questioning. Aleman "knowingly and intelligently" waived his right to remain silent and his right to have an attorney present during questioning. Rather than being governed by <u>Edwards</u>, <u>Minnick</u>, and the other cases relied upon by Plaintiff, the facts of the instant case are more analogous to those in <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1044 (1983), and <u>People v. Cole</u>, 217 Ill. App. 3d 1079, 578 N.E.2d 86 (1st Dist. 1991), cases where a suspect signed a <u>Miranda</u> waiver form and agreed to answer questions by the police.

### I. AFTER CONFERRING WITH HIS ATTORNEY, PLAINTIFF "KNOWINGLY AND INTELLIGENTLY" WAIVED HIS <u>MIRANDA</u> RIGHTS

This case turns on the fact that Aleman "knowingly and intelligently" waived his right to remain silent and his right to have an attorney present during questioning. Accordingly, this Court should look to the Supreme Court's ruling in <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1044 (1983), rather than <u>Edwards</u>.

In <u>Bradshaw</u>, police were investigating the death of a man who was a passenger in an overturned pick-up truck. <u>Id</u>. at 1042. Mr. Bradshaw was taken into the police station for questioning. <u>Id</u>. After being informed of his <u>Miranda</u> rights, he made some inculpatory remarks and was placed under arrest for furnishing liquor to the decedent, a minor. <u>Id</u>. He was again advised of <u>Miranda</u> rights and he again denied his involvement

5

and said "I do want an attorney before it goes very much further. Id. at 1041-42. While being transferred to another holding station, the respondent asked, "Well, what is going to happen to me now?" Id. at 1042. The officer answered "You do not have to talk to me. You have requested an attorney and I don't want you talking to me unless you so desire because anything you say – because – since you have requested an attorney, you know, it has to be at your own free will." Id. A conversation ensured whereby the respondent agreed to submit to a polygraph examination. Id. The following day, following yet another reading of his Miranda rights, and the respondent's signing a written waiver of those rights, the polygraph was administered. Id. After the examination, the respondent recanted his earlier story and admitted that he passed out behind the wheel while intoxicated thereby killing his passenger. Id.

The respondent's motion to suppress the statements was denied and he was found guilty after a bench trial. In reversing the conviction, the Oregon Court of Appeals relied upon Edwards finding that the statements had been obtained in violation of respondent's Fifth Amendment rights.

After granting certiorari, the U.S. Supreme Court reversed the Oregon Court of Appeals, holding that the Oregon Court of Appeals had misapplied Edwards. The relevant question, the Court held, was "whether a valid waiver of the right to counsel and right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities." Id. at 1046 (citing Edwards v. Arizona, 451 U.S., at 486. n. 9). That determination, the Court held, depended "upon the particular facts and conduct of the accused." Id.

The Supreme Court held that the Oregon trial court had properly made this inquiry and had found that the respondent was advised of his rights, understood them and after requesting an attorney changed his mind without any impropriety on the part

6

of the police. Id. at 1046. The Supreme Court saw no reason to dispute those conclusions based upon the trial court's first-hand observation of the witnesses to the events involved. Id. at 1046-7. The judgment of the Oregon Court of Appeals was reversed and the cause was remanded for further proceedings consistent with this opinion. Id. at 1047.

       In further support, the Defendants direct the Court to the decision reached in People v. Coles, 217 Ill. App. 3d 1079, 578 N.E.2d 86 (1st Dist. 1991), where the defendant was arrested by the Wilmette Police Department and, after being advised of his rights, asked the arresting officer to contact his attorney. Id. at 1080. The arresting officer said, "you haven't been booked yet, and you cannot make a call until you have been booked and we can keep you here for hours." Id. The defendants signed a Miranda waiver and put "No" next to the question, "Having these rights in mind, do you wish to talk to me/us?" The arresting officer continued to talk to the defendant saying that he was going to be incarcerated for a long time and if he did not talk and submit to an apartment search, he would be placed in jail that evening and would not be allowed to leave. Id. He was also told that he would not get a bond hearing until Monday because the court were closed over the weekend and that the bond would be very high. Id. After being told this, the defendant told the arresting officer anything that he wanted to hear to get out of there. Id. at 1081. The trial court denied the defendant's motions to suppress, finding that it was "a question of credibility" that the court had had an opportunity "both to hear the evidence and to observe the demeanor" of both the defendant and the police officers. Id. at 1083. The court found that the State had "by clear and convincing evidence" shown that it was a "totally voluntary type of cooperation on the part of the defendant." Id.

       The Appellate Court rejected the defendant's reliance upon Edwards and Minnick v. Mississippi, 498 U.S. 146 (1990), (discussed *infra*) finding them to be inapposite. The Court found that the "overriding difference is that the resumption of the dialogue

between the defendant and the police was initiated by the defendant, not the police." Id. at 1085. The trial court's denial of the defendant's motion to suppress was affirmed.

The facts and circumstances in Coles are substantially similar to those presented in the instant matter. Much like the defendant in Coles, Aleman was told by Sgt. Micci that if he did not speak to him, that he was not going home that evening. Plaintiff's 56.1 ¶ 39. Aleman was given the opportunity to speak with an attorney and expressly waived his right to have an attorney present when he told Sgt. Micci that he did not have a problem answering questions and that his attorney said to go ahead and answer questions. Defendant's 56.1(b)(3)(C) ¶¶ 70-72. Indeed, Aleman indicated to Sgt. Micci and Officer Villanueva that his lawyer said "to go ahead" with answering questions. (Cf. Plaintiff's 56.1 ¶ 56 with Defendants' 56.1(b)(3)(C) ¶ 70). In fact, unlike the situation in Cole where the defendant checked off on the Miranda waiver that he would not speak to police in the absence of an attorney, Aleman signed the Miranda waiver without any such reservation – a complete waiver.

With the events having been captured on video, this Court has the benefit of seeing the demeanor of Rick Aleman and the investigating officers, Sgt. Micci and Officer Villanueva, for purposes of evaluating the voluntariness of the waiver. Here, it is clear that Aleman expressly waived his right to have an attorney present after conferring with an attorney and then knowingly and intelligently informing the officers of his express desire to answer questions in the absence of an attorney.

**II.      CASES RELIED UPON BY PLAINTIFF DO NOT INVOLVE
          ANY EXPLICIT WAIVER AND THUS ARE DISTINGUISHABLE**

In Edwards v. Arizona, 451 U.S. 477 (1981), the petitioner was arrested on criminal charges and was given his Miranda rights. Id. at 478. He was questioned until he said he wanted an attorney, at which time questioning stopped. Id. at 479. The following day, police officers came to the jail and, after stating that they wanted to talk to him and again informing petitioner of his Miranda rights, obtained his confession when

8

he said that he was willing to talk. Id.  The trial court ultimately denied petitioner's motion to suppress his confession, finding the statement to have been voluntary, and he was thereafter convicted. Id. at 480.  The Arizona Supreme Court held that during his interview at the jail he had waived his right to remain silent and his right to counsel when he voluntarily had given his statement after again being informed of his rights.  Id.  The U.S. Supreme Court reversed, holding that the prosecution could not show that the petitioner's waiver of his Miranda rights was voluntary simply by showing that the petitioner had responded to police-initiated interrogation after being again advised of his rights.  Id. at 487.  Edwards is distinguishable from the facts of the instant case because the defendant was not afforded an opportunity to speak with an attorney prior to questioning, as Aleman was, or sign a Miranda waiver form after conferring with his attorney, as Aleman did.

     Aleman's reliance upon Minnick v. Mississippi, 498 U.S. 146 (1990), is equally misplaced. In Minnick, the petitioner was arrested in San Diego for a suspected capital murder that occurred in Mississippi. Id. at 148. The following day, two FBI agents came to the jail to interview him. Id. The agents read the petitioner his Miranda rights which he understood. Id. He refused to sign the Miranda waiver form. Id. After answering some questions, he was reminded that he did not have to answer questions without an attorney present. Id. It was reported that the petitioner said, "Come back Monday when I have a lawyer." Id. The FBI interview ended. Id. at 149. The petitioner did speak with an appointed lawyer on two or three occasions, however, the record was unclear if they were in person. Id.

     The following Monday, a deputy sheriff from Mississippi arrived in San Diego to question the petitioner. Id. The petitioner was again advised of his rights and again refused to sign the Miranda waiver.  However, he did make incriminating statements that led to his being tried for murder. Id. He moved to suppress all statements given to both the FBI and the deputy sheriff. The trial court denied the motion with respect to

9

statements made to the deputy sheriff and granted the motion with respect to statements made to the FBI. Id. He was convicted on two counts of capital murder and sentenced to death. Id.

On appeal the petitioner argued that the confession to the deputy sheriff was taken in violation of his Fifth and Sixth Amendment rights. Id. The Mississippi Supreme Court held that the Edwards rule was inapplicable under these circumstances because counsel was made available to him and his Fifth Amendment right to counsel was satisfied. Further, his Sixth Amendment right was waived when he spoke to the deputy sheriff. Id. at 150. The U.S. Supreme Court, without reaching the Sixth Amendment argument, held that Fifth Amendment protection of Edwards was not terminated or suspended by consultation with counsel. Id.

In the instant matter, unlike the petitioner in Minnick who refused to sign the Miranda waiver on two occasions, Aleman signed the Miranda waiver after conferring with his attorney. Further, unlike the petitioner in Minnick, who was presumably never instructed by his attorney to go ahead with answering questions, Aleman did receive permission to go ahead (Def. 56.1(b)(3)(B) ¶¶ 70-71). Certainly, the Minnick Court found nothing in the record to indicate that the suspect had made a "knowing and intelligent" waiver of his right to an attorney and his right to silence. In this respect, Minnick is clearly distinguishable from the instant case.

Plaintiff's reliance upon Smith v. Illinois, 469 U.S. 91 (1984), is also erroneous. In Smith, the 18-year old suspect was advised of his Miranda rights and after being advised of his right to consult with an attorney and to have an attorney present during questioning, Smith said "Uh, yeah. I'd like to do that." Id. at 93. Instead of terminating the questioning at that point, the officers proceeded to finish reading Smith his Miranda rights and then pressed him to answer their questions. Id. Smith went on to confess to the crime, recant his story and then state, "I wanta get a lawyer." Id. at 94. Smith motion to suppress was denied. The Illinois Appellate Court and Illinois Supreme Court both

10

affirmed the conviction, finding that while the first request for counsel was clear and unequivocal, subsequent statements demonstrated his uncertainty about exercising his right to counsel and were "ambiguous." Id. at 94.

The U.S. Supreme Court held that the threshold inquiry in this matter was whether Smith invoked his right to counsel in the first instance. Id. at 95. The Supreme Court held that an "accused's post-request responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself. Such subsequent statements are relevant only to the distinct question or waiver." Id. at 100.

Again, Smith is distinguishable because the focus of inquiry was whether the accused's request for an attorney was clear and unequivocal. Further, Smith did not even reach the issue of waiver. In the matter *sub judice*, there is no question that Sgt. Micci was aware that Aleman wanted to consult with an attorney before answering questions. In fact, after Sgt. Micci read Aleman his Miranda rights, Sgt. Micci said to him: "So, if you want to call your attorney first, that's fine with me." Def. 56.1(b)(3)(C) ¶ 65. Further, there is ample evidence demonstrating Aleman's knowing and intelligent waiver of his right to have an attorney present and his right to silence, all of which was discussed s*upra*.

Despite the Plaintiff's strained attempt to apply favorable precedent to its case, it is quite clear that the September 9, 2005 questioning of Aleman conformed with the principles set forth in Miranda. Much like the arresting officer in Bradshaw, Sgt. Micci said that he could not and would not speak to Aleman unless he signed the Miranda waiver. Def. 56.1(b)(3)(C) ¶ 64. Aleman spoke to his attorney on multiple occasions prior to signing the Miranda waiver. Def. 56.1(b)(3)(C) ¶ 67. After speaking with his attorney, at approximately 5:49 p.m., Aleman indicated to Sgt. Micci and Officer Villanueva that his lawyer said "to go ahead" with answering questions. (Cf. Plaintiff's 56.1 ¶ 56 to Defendants' 56.1(b)(3)(C) ¶ 70). Sgt. Micci confirmed that Aleman's attorney told him "to go ahead" and answer questions and that Aleman was voluntarily

11

agreeing to do so. Def. 56.1(b)(3)(C) ¶¶ 71-72. Before any substantive questioning began, Aleman executed the Miranda waiver. Def. 56.1(b)(3)(C) ¶ 73. The multiple opportunities that Sgt. Micci and Officer Villanueva gave to Aleman to speak with his attorney and their careful determination that he was proceeding voluntarily show that the facts of this case are not in any way comparable to the cases relied upon by Plaintiff.

### III. PLAINTIFF'S WAIVER WAS VOLUNTARY

Plaintiff's final argument is that the Court should ignore Aleman's waiver of his Miranda rights on grounds that the waiver was involuntary, citing McNeil v. Wisconsin, 501 U.S. 171 (1991) (upholding conviction after finding that accused's invocation of Sixth Amendment right to counsel during judicial proceeding did not constitute invocation of right to counsel derived by Miranda v. Arizona), Michigan v. Harvey, 494 U.S. 344 (1990) (overturning grant of motion to suppress after finding that statement obtained in violation of Sixth Amendment could be used for impeachment purposes), and Arizona v. Roberson, 486 U.S. 675 (1988) (holding that Edwards barred questioning of suspect for unrelated crime when attorney was requested, but never provided, in relation to other crime). Cf. Maryland v. Shatzer, 130 S. Ct. 1213 (2010) (holding that Edwards does not apply where fourteen-day break in custody has occurred between suspect's initial request for right to counsel and subsequent questioning). But these cited cases involved purported waivers where the suspect previously had requested to speak with an attorney but had not been able to do so prior to agreeing to waive his Miranda rights. That situation clearly did not occur in Aleman's case, where Aleman not only spoke with his attorney on multiple occasions but, based on Aleman's own statements, was following his attorney's advice in agreeing to answer questions. Def. 56.1(b)(3)(C) ¶¶ 70-72. There is ample evidence to show that the Plaintiff "knowingly and intelligently" waived his right to silence and his right to counsel.

12

**WHEREFORE**, the Defendants, VILLAGE OF HANOVER PARK, a municipal corporation, OFFICER TODD CARLSON, OFFICER ERIC VILLANUEVA, OFFICER CAROL LUSSKY, MASTER SERGEANT JOSEPH MICCI and MASTER SERGEANT GERARD FALLON, respectfully request that the Court deny Plaintiff's Motion for Partial Summary Judgment on Count V.

Respectfully Submitted,

<u>/s/ Michael R. Hartigan</u>
Attorney for Defendants
Russell W. Hartigan
Michael R. Hartigan
HARTIGAN & O'CONNOR P.C.
20 N. Clark Street #1250
Chicago, IL 60602
(312) 201-8880

<u>/s/ Peter C. Koch</u>
Attorney for Defendants
Peter C. Koch
Alice Keane
Assistant Attorneys General
General Law Bureau
100 W. Randolph Street, 13th Floor
Chicago, Illinois  60601
(312) 814-6534 & -3711

13

## **CERTIFICATE OF SERVICE**

   The undersigned, an attorney of record, states that a copy of the attached Joint Response to Plaintiff's Motion for Partial Summary Judgment (Count V) was served this 29th day of March 2010 by electronic filing pursuant to Rule XI of this Court's General Order on Electronic Case Filing.

            <u>/s/ Peter C. Koch</u>
            PETER C. KOCH
            Assistant Attorney General
            General Law Bureau
            100 W. Randolph Street, 13th Floor
            Chicago, Illinois 60601
            (312) 814-6534
            pkoch@atg.state.il.us