UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICK ALEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 5049 |
| | ) | |
| vs. | ) | Judge Bucklo |
| | ) | Magistrate Judge Denlow |
| VILLAGE OF HANOVER PARK, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION
FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Rick Aleman, through counsel, Jackowiak Law Offices, respectfully submits the following reply in support of his motion for summary judgment on Count V.

On the morning of September 9, 2005, 1-year-old Joshua Schrik was rushed to the hospital in an unresponsive state. Shortly thereafter, Plaintiff Rick Aleman was taken to the Hanover Park police station from the scene. Plaintiff was not allowed to leave the Hanover Park police station all day. When Defendant-Officers Micci and Villanueva began interrogating Plaintiff at 5:12 that evening, he knew that he was under arrest and being questioned as a suspect.

Our constitution guarantees certain rights to people who are interrogated by the police. One of those rights, of course, is to have counsel present during questioning. After Plaintiff was advised of his Miranda rights, Plaintiff explicitly said that he wanted to speak with his attorney:

> *Micci*: If you want to call your attorney first that's fine with me.
> *Plaintiff*: Yeah. It will just take a second

(Plaintiff's Statement of Facts, ¶¶ 24, 25.) Under clear, controlling and unambiguous Supreme Court precedent, the interrogation had to end right there. See, e.g., Rhode Island v. Innis, 446 U.S. 291, 293, 100 S.Ct. 1682, 1686 (1980) ("once a defendant in custody asks to speak with a lawyer, all interrogation must cease until a lawyer is present.")

If the Defendants would have honored Plaintiff's request, this would have blocked their goal of interrogating Plaintiff and obtaining a confession. So the Defendants ignored Plaintiff's assertion of his right to counsel and kept badgering Plaintiff to "agree" to talk to them without an attorney present. Despite Defendants' pressure and the coercive environment, Plaintiff repeated that he wanted an attorney at least four more times. (SOF, ¶¶ 22, 25, 36, 48, 56.) Rather than stop

the interrogation as required by clear Supreme Court precedent, however, each time that Plaintiff requested an attorney or spoke to his attorney on the phone, the Defendants increased the pressure on Plaintiff to waive his rights. Defendant Micci told Plaintiff at least five times that Plaintiff would not be released unless he waived his rights (SOF, ¶¶ 39, 43, 47), and repeatedly told Plaintiff that it was in his best interests to waive his rights. (SOF, ¶ 43, 45). The Defendants' plan was a success. They eventually wore down Plaintiff's resolve and badgered him into agreeing to speak and waive his right to have his attorney present.

The law on this issue could not be more clear. Defendants had to stop questioning Plaintiff when Plaintiff first requested an attorney. They didn't do so. The fact that Plaintiff eventually cracked under pressure doesn't vindicate Defendants' unconstitutional conduct.

**Non-Private 'Consultation' With A Lawyer Did Not Satisfy Miranda**

In their response to Plaintiff's motion for summary judgment, Defendants argue that they honored Plaintiff's Miranda rights by giving him "ample opportunities to confer with an attorney." (Def. Brief p. 5.) There are two major problems with this argument.

First, it is black letter law that once a suspect in custody says he wishes to speak to an attorney, all interrogation must stop until an attorney is *present*. See, e.g., Minnick v. Mississippi, 498 U.S. 146, 151-52, 111 S.Ct. 486, 491 (1990) ("when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney.")

Second, what Defendants' characterize as a "consultation" between Plaintiff and his lawyer was not a consultation at all. The essence of the attorney-client relationship is the right to communicate confidentially and privately with one's attorney. See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) (The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice"); United States v. Rosner, 485 F.2d 1213, 1224 (2d Cir. 1973) ("The essence of the [right to counsel] is, indeed, privacy of communication with counsel"); Greater Newburyport Clamshell Alliance v. Pub. Serv. Co., 838 F.2d 13, 21 (1st Cir.1988) ("utmost candor between an attorney and client is essential to effective assistance of counsel.")

The video of the interrogation room shows that Plaintiff's phone conversation with his lawyer was anything but private and confidential. Defendant Villanueva was standing right next to Plaintiff while Plaintiff spoke with his attorney on the phone. Villanueva even interjects comments during that conversation—for instance giving Plaintiff a phone number—and at one point takes the phone from Plaintiff and talks to Plaintiff's lawyer himself. Likewise, Plaintiff was under audio and video surveillance (by the same police who were detaining and questioning him) and the conversations were being monitored. Of course, those circumstances did not permit Plaintiff to have a frank and confidential conversation with his lawyer. The argument that this monitored phone conversation satisfied Plaintiff's constitutional right to confer with his attorney in *private* and have his attorney *present* for any questioning is implausible and unsupportable.

**Defendants' Reliance on Bradshaw and Cole is Misplaced**

Defendants argue that this case is controlled by two inapposite cases, Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983), and People v. Cole, 217 Ill. App. 3d 1079, 578 N.E.2d 86 (1st Dist. 1991). The holdings in those cases were based on the fact that the suspects themselves initiated the conversations with the police after previously asserting their right to counsel. That didn't happen here. Actually it was the exact opposite. After each time that Plaintiff asserted his right to counsel or "spoke" to his counsel, *the Defendants initiated* further communication with Plaintiff, always advising Plaintiff that it was in his best interest to agree to speak and he would not go home unless he did. (See SOF, ¶¶ 33-35; 52-55.)

In Oregon v. Bradshaw, James Bradshaw was detained as a suspect in the death of a woman whose body was found in his car. He was advised of his Miranda rights and asked for an attorney. The police ceased questioning him. Later Bradshaw voluntarily initiated conversations with a police officer who was transporting him to jail. The officer advised Bradshaw again that he did not have to talk to the police and Bradshaw replied that he understood his rights. Bradshaw was re-Mirandized and signed a waiver. Bradshaw then admitted that he was involved in the woman's death. The Supreme Court held that it was an error to hold that the statements had to be suppressed. The Court explained that "after the right to counsel has been asserted by an accused, further interrogation should not take place *unless the accused himself initiates further communication, exchanges, or conversations with the police*" and the subsequent decision to waive Miranda is shown to be knowing and intelligent. Bradshaw, 462 U.S. at 1039-40 (emphasis added).

3

Likewise in Cole, a suspect in a drug case refused to speak to investigators from the Metropolitan Enforcement Group, but later initiated communication with Wilmette police and told them that he wanted to speak with them because he thought they would treat him better. There, the court found that the statements did not have to be suppressed:

> The overriding difference between the case before us and Minnick (and Edwards) is that the resumption of the dialogue between the defendant and the police was initiated by the defendant, not the police.

Cole, 217 Ill. App. 3d at 1085.

In this case, the Defendants don't even try to argue that Plaintiff initiated conversations with Defendants. Of course, it is obvious from the video of the interrogation room that after every request for counsel, Defendants were the ones who initiated the conversations with Plaintiff. (SOF, ¶¶ 33-35; 52-55.) The Defendants' baseless reliance on Bradshaw and Cole should be rejected.

**The "Waiver" Was Legally Meaningless**

Defendants' response to Plaintiff's summary judgment motion is based entirely on the fact that Plaintiff eventually "agreed" to talk. They quote an exchange between Plaintiff and Defendants where Plaintiff states that he "doesn't really have a problem with it" and agrees to answer questions. (Def. Brief p. 2.) This exchange occurred at 5:50 p.m. (SOF, ¶¶ 55-57.) What Defendants leave out is that between 5:12 (when the interrogation began) and 5:50 (when Plaintiff signed the waiver) Plaintiff told Defendants six times that he wanted an attorney.

1. At 5:14 p.m., two minutes after Defendants entered the interrogation room, Plaintiff requested an attorney. ("Before I do this, I gotta call [my attorney].") (SOF, ¶ 22.)

2. At 5:16 p.m., Plaintiff made his second request. (Micci: "If you want to call your attorney first that's fine with me." Plaintiff: "Yeah. It will just take a second.") (SOF, ¶¶ 24, 25.)

3. At 5:25 p.m., after Defendants listened in on Plaintiff's phone conversation with his attorney, Plaintiff informed Defendants that his attorney advised him to remain silent. (Micci: "How we doing?" Plaintiff: "Not good. I called him and he told me not to do this right now.") (SOF, ¶¶ 35, 36.)

4. At 5:29 p.m. Plaintiff again told Defendants he wanted an attorney. ("Can I call [my attorney] back?") (SOF, ¶ 48.)

5. At 5:42 p.m. Plaintiff reiterated that he had a lawyer. (Micci: "So you called your attorney?" Plaintiff: "Yeah.") (SOF, ¶ 52-53.)

4

      6.      At 5:49 p.m. Plaintiff again stated that his attorney told him not to speak. ("I talked to the lawyer and he said no.") (SOF, ¶ 56.)

Both Micci and Villanueva admitted in their depositions that they were aware that Plaintiff had spoken to his lawyer and his lawyer had instructed him not to speak. (SOF, ¶¶ 37, 38.) They continually urged Plaintiff to waive his rights anyway.

Under these circumstances, the waiver was involuntary as a matter of law. McNeil v. Wisconsin, 501 U.S. 171, 177, 111 S.Ct. 2204 (1991) (if an individual requests an attorney and the police subsequently initiate questioning in the absence of counsel, any statements are considered involuntary "even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards."); Arizona v. Roberson, 486 U.S. 675, 682, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (if an individual has requested an attorney, any subsequent waiver made without an attorney present is presumed to have "come at the authorities' behest.")

Finally, Defendants' argument that they believed Plaintiff was "following his attorney's advice" in agreeing to talk to Defendants is disingenuous. Villanueva admits that he spoke to Plaintiff's lawyer Paul Ankin on the phone. (SOF, ¶ 31.) Ankin told Villanueva that Plaintiff was not going to talk. (SOF, ¶ 31.) Villanueva can be heard on the video saying to Ankin, "You gonna have him say that too?" (SOF, ¶ 32.) Moments later, Micci and Villanueva reinitiated questioning of Plaintiff. When Micci asked Plaintiff, "How we doing?" Plaintiff replied, "Not good. I called him and he told me not to do this right now. ..." (SOF, ¶¶ 35, 36.) Both Micci and Villanueva testified that they understood that Plaintiff had spoken to his lawyer and his lawyer had advised him not to speak. (SOF, ¶¶ 37, 38.)

## CONCLUSION

Plaintiff requests that this Honorable Court enter summary judgment in his favor on Count V of the First Amended Complaint.

Respectfully submitted,


/s/ Adele D. Nicholas
*Counsel for the Plaintiff*

Adele D. Nicholas
Lawrence V. Jackowiak
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595

6