07-30-4820 (RWH/MRH)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RICK ALEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.  07 C 5049** |
| | ) | |
| **VILLAGE OF HANOVER PARK; et al.** | ) | **Judge Bucklo** |
| | ) | |
| **Defendants.** | ) | **Magistrate Judge Denlow** |

**DEFENDANTS' JOINT REPLY IN FURTHER SUPPORT OF**
**THEIR MOTIONS FOR SUMMARY JUDGMENT**

NOW COME Defendants, VILLAGE OF HANOVER PARK, a municipal

corporation, OFFICER TODD CARLSON, OFFICER ERIC VILLANUEVA and OFFICER

CAROL LUSSKY, by and through their attorneys, Hartigan & O'Connor, P.C., and

ILLINOIS STATE POLICE MASTER SERGEANT JOSEPH MICCI and ILLINOIS

STATE POLICE MASTER SERGEANT GERARD FALLON, by and through their

attorney, LISA MADIGAN, Attorney General of Illinois, and in further support of their

request for summary judgment, submit the following joint reply:

**ARGUMENT**

Before addressing arguments raised within Plaintiff's response brief, the

Defendants note that the brief is replete with self-serving and conclusory statements

without proper citation to the record. Indeed, the very first paragraph serves as an

example. District courts are entitled to enforce Local Rule 56.1 strictly. See Ammons v.

Aramark Uniform Servs., Inc. 368 F.3d 809, 817 (7th Cir. 2004) (citing Bordelon v.

Chicago School Board of Trustees, 233 F. 3d 524, 527 (7th Cir. 2000). Defendants

respectfully request that the Court give no consideration to these statements because to do so "would rob the other party of the opportunity to show that such facts are disputed." See Divane v. Sonak Elec. Contractors, Inc., No. 05 C 1211, 2008 U.S. Dist. LEXIS 1901, at *2 (N.D. Ill. Jan. 9, 2008); see also Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Further, Plaintiff's Response Brief Section I: "Introduction" and Section II: "The Red Herrings" (pgs. 1-6), fail to respond to arguments raised within the Defendants' respective briefs. Those sections appear to be simply a regurgitation of points raised in Plaintiff's Motion for Partial Summary Judgment. (Doc. 123). Because these portions of the response brief fail to address arguments advanced by Defendants, they should not be taken into consideration when deciding Defendants' respective motions.

**I.     BASED UPON THE TOTALITY OF CIRCUMSTANCES, AND WHAT THE ARRESTING OFFICERS KNEW AT THE TIME OF THE ARREST, PROBABLE CAUSE EXISTED TO ARREST RICK ALEMAN**

Probable cause is an objective concept that relies on the common-sense judgment of police officers based on the totality of the circumstances. See Deng v. Sears, Roebuck, & Co. 552 F.3d 574, 557 (7th Cir. 2009); United States v. Hobbs, 509 F.3d 353, 359-60 (7th Cir. 2007). To have probable cause for an arrest, "law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge *at the time of the arrest*, that the suspect had committed or was committing an offense." United States v. Hayes, 236 F.3d 891, 894 (7th Cir. 2001) (emphasis added); see also Illinois v. Gates, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317 (1983) ("probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity").

Plaintiff consistently ignores the above-referenced standards by suggesting that Defendants should have taken into consideration information not in their possession on September 9, 2005. Plaintiff erroneously cites Gonzalez v. City of Elgin, 578 F.3d 526 (7th Cir. 2009), in support of his argument that probable cause to arrest was lacking. However, in Gonzalez, the Seventh Circuit held that summary judgment was inappropriate because there were no undisputed relevant statements of fact. In the instant case, however, there are a considerable amount of undisputed facts that support the existence of probable cause to arrest Rick Aleman on September 9, 2005 for aggravated battery and on September 15, 2005 for first degree murder. Each officer's respective involvement in the two (2) arrests of Rick Aleman is set forth below:

### A.   Officer Carol Lussky of the Hanover Park Police Department

The parties agree that Carol Lussky ("Lussky") was the first officer to speak with the Plaintiff at his home on September 9, 2005. (See Plaintiff's Rule 56(b)(3)(B), Doc. 150, ¶¶17, 35). There is also no dispute that Lussky instructed her colleague, Detective Todd Carlson ("Carlson") to go to the hospital to interview people of interest and physicians attending to Joshua Schrik ("Joshua") ( Doc. 150, ¶36). The parties agree that prior to leaving Aleman's home, Lussky received information from Carlson that Joshua had sustained injuries consistent with "shaken baby syndrome", including retinal hemorrhaging. (Doc. 150, ¶37). The parties agree that Lussky requested that both Aleman and his wife, Barbara, come to the police station for questioning and that Aleman consented to do so. (Doc. 150, ¶18). There is no dispute that Aleman was not under arrest or handcuffed at the time that he was asked to go to the police station for questioning and his subsequent transport (Doc. 150, ¶¶19-20). The parties agree that

after placing the Alemans in an interview room, Lussky activated the DVD recording system after Carlson conveyed to her that Joshua was not likely to survive. (Doc. 150, ¶¶39-40). There is no dispute that after Carlson conveyed this information, Lussky believed that this could become a homicide investigation. (Doc. 150, ¶41).

The overriding issue is whether Lussky had probable cause to detain Plaintiff based upon information known to her at that time. Plaintiff rather glibly submits that "all [Lussky] knew was that Joshua was injured and was taken to the hospital." (Doc. 147, pg. 7). Lussky knew much more than that. She knew that Plaintiff was the last adult to have custody of the child and that the child was exhibiting life-threatening symptoms consistent with "shaken baby syndrome." (Doc. 150, ¶37). These facts are not in dispute. This is not a case where a baby was reported as "injured" as the Plaintiff would have the Court believe. There was credible information passed onto Lussky that the child would not survive the injuries which Lussky reasonably believed were inflicted, either in whole or in part, by Plaintiff. Based upon what was known to her at that time, Lussky's detention of Plaintiff was both proper and supported by probable cause. Plaintiff's claim for false arrest against Sergeant Lussky must fail.

### B.     Detective Todd Carlson of the Hanover Park Police Department

There is no dispute that on September 9, 2005, upon arrival at the police department, Carlson was dispatched to report to Plaintiff's home wherein he was then instructed by Lussky to go to the hospital. (Doc. 150, ¶¶59-60). The parties agree that Carlson's understanding was that there was an unresponsive infant and he was to interview witnesses and physicians at the hospital to determine what happened. (Doc. 150, ¶¶36; 61). It is agreed that after Carlson learned from a physician that the baby

was exhibiting symptoms of "shaken baby syndrome" that he contacted Lussky to inform her of the same. (Doc. 150, ¶63). The parties agree that Carlson interviewed Danielle Schrik (Joshua's mother); Nancy Schrik (Joshua's grandmother); Barbara Sabel (Danielle's boyfriend's mother) and Seth Sabel (Danielle's boyfriend), all of whom had had contact with Joshua at some point. (Doc. 150, ¶¶64-65). It is further agreed that in response to Carlson's question, Danielle Schrik denied that she had ever hit or struck Joshua. (Doc. 150, ¶66).

On September 14, 2005, Carlson attended the autopsy of the now-deceased Joshua Schrik wherein the medical examiner, Dr. Jones, told him that the injuries sustained by Joshua Schrik occurred on September 9, 2005. (Doc. 150, ¶¶68-69). Dr. Jones also spoke with an Assistant State's Attorney from the Felony Review Division, Lance Northcutt, regarding her findings regarding the timing of the injury. (Doc. 150, ¶71). There is no dispute that shortly after the charges were approved by felony review, Detective Carlson lodged a criminal complaint for First Degree Murder. (Doc. 150, ¶72). On September 15, 2005, Plaintiff  was placed under arrest and taken to the Rolling Meadows courthouse for a bond hearing wherein an express finding of probable cause to detain was made. (Doc. 150, ¶¶73-74).

There is no evidence that Carlson had any interaction with Plaintiff until September 15, 2005 when he placed Aleman under arrest for First-Degree murder. There is ample evidence that he had probable cause to make this arrest. First, Danielle Schrik denied that she ever hit or strike Joshua Schrik. (Doc. 150, ¶66). Carlson attended an autopsy where there was a medical opinion that the child died on September 9, 2005 in a manner consistent with homicide. (Doc. 150, ¶¶68-69, 106). Dr.

Jones' findings were sufficient to ASA Lance Northcutt to support approval of First

Degree Murder charges. (Doc. 150, ¶71). Based upon all of the above, it is clear that

probable cause existed for Carlson to arrest Rick Aleman for First Degree Murder.

### C. Illinois State Police Master Sergeant Micci

Plaintiff argues that at the time that Sergeant Micci began his interview of the

Plaintiff, there was insufficient evidence to support existence of probable cause. (Doc.

147, pg. 7). Plaintiff argues that rather than being incriminating, his behavior was

appropriate, exemplary, and laudable. But this was not the opinion of any first

responder interviewed by Micci. For example, HPPD Officer Terrence Sherrill told Micci

and Fallon that when he arrived at Plaintiff's house, Aleman appeared agitated and

could not calm down. (Doc. 149, ¶32). HPPD Sgt. John Dossey told Micci and Fallon

that Plaintiff had a panicked look on his face and had said at least twice that he did not

want to go to jail for the rest of his life and did not want to be unable to see his children.

(Doc. 149 ¶¶35-36). Lt. Paul Rosenthal informed Micci that that Plaintiff had appeared

distraught and nervous. (Doc. 149, ¶38). Plaintiff does not explain why investigators

should not have considered these facts as self-incriminating. Furthermore, there is

absolutely no evidence that "Lieutenant Rosenthal learned early on and promptly

reported to Micci and Fallon that Joshua was displaying symptoms of brain injury earlier

in the week." (Doc. 147, pg. 8) (citing Doc. 148, ¶140). Plaintiff's Paragraph 140 says

nothing about "symptoms of brain injury."

Plaintiff also argues that "statements from Joshua's treating doctors did not

implicate Plaintiff." (Doc. 147, pg. 8). But this is nothing more than an attack on the

accuracy of ISP Sgt. Cardona's reports upon which Micci reasonably relied. Plaintiff has

not presented any evidence that Micci's reliance upon Cardona's field work was improper. Indeed, Cardona was voluntarily dismissed from this action. Moreover, Plaintiff's challenge to the accuracy of Cardona's field work is not based upon what treating physicians told him on the date of the incident, but rather what they testified to years later at deposition in this federal lawsuit. (Doc. 148, ¶¶23-39). What physicians said to Cardona *on the day of the incident* suggested, at a minimum, that the trauma was inflicted to Joshua Schrik on that day. (Doc. 149, ¶¶9-20).

Nor is there evidence that Cardona's assessment of Joshua's mother was unreasonable. Plaintiff erroneously states that "Danielle admitted to Carlson and Cardona that Joshua had been displaying symptoms of brain injury earlier in the week." (Doc. 147, pg. 9) (citing Doc. 148, ¶¶98, 108, 109). Nowhere in the record does Danielle Schrik, a layperson, diagnose her baby with a "brain injury." To the contrary, she told Carlson and Cardona that Joshua had a fever earlier in the week. (Doc. 150, ¶119). Nor is there any evidence that Sgt. Cardona "'ruled out' Danielle as a suspect even after they learned of Danielle's criminal history and tendency toward violence." (Doc. 147, pg. 9) (citing Doc. 148 ¶¶ 99, 112). Even if that were true, Cardona is no longer a party to this action and any purported mistake that he may have made in that regard does impute liability upon Micci.

D. **Illinois State Police Master Sergeant Fallon**

Plaintiff's argument for sustaining the September 9, 2005 false arrest claim against Sgt. Fallon boils down to two inconsequential points. The first – that Lt. Rosenthal had informed Fallon and Micci that Joshua was displaying symptoms of brain injury earlier in the week" – has already been rebutted. *See* § I, B, *supra*. The second

is that Fallon completed an ISP report on Plaintiff's September 9, 2005 arrest and that

he listed himself as the arresting officer. (Doc. 147, pg. 10). However, Plaintiff does not

provide any evidentiary support that Fallon either effectuated or participated in the

arrest. (Doc. 147, pg 10). Therefore, the Court should disregard this argument.

Next, Plaintiff suggests that Fallon's role in processing Plaintiff on September 15,

2005 on charge of First Degree Murder also supports a false arrest claim. (Doc. 147,

pg. 15). Plaintiff argues that Sgt. Fallon "was the supervisor assigned to the

investigation." Id. There is no support provided for this assertion.

Plaintiff also states that Fallon "played a key role" in the investigation. (Doc. 147,

pg. 15) (citing Doc. 148, ¶¶ 135-140). But Paragraphs 135 to 140 of Plaintiff's

Statement of Additional Material Facts merely recount some information that Fallon and

Micci learned during their interviews of the first responders. The statements in those

paragraphs do not suggest that Fallon did anything wrong when he was carrying out his

investigative duties.

The only other argument against Fallon is that he was "one of the officers who

placed Plaintiff under arrest and, second, that "[h]is role was much more than the mere

booking officer." (Doc. 147, pg. 15). The first statement does not rebut Fallon's

testimony that he was merely processing Plaintiff on September 15. (Doc. 149, ¶105).

The second statement is conclusory and lacks any evidentiary support. Significantly,

Plaintiff does not even respond to the argument in ISP Defendant's initial memorandum

that Fallon properly relied on the arrest warrant of Judge Fecarotta. (Doc. 149, ¶95).

This failure alone warrants summary judgment in favor of Fallon.

### E.     Officer Eric Villanueva of the Hanover Park Police Department

The parties agree that on September 9, 2005, Officer Villanueva was initially assigned to monitor the hallway outside the interview rooms to ensure that anybody coming in or out of the interview review occupied by the Aleman's would have some sort of direction. (Doc. 150, ¶44). There is no dispute that he was later present to witness the interview conducted by Sergeant Micci of the Illinois State Police. (Doc. 150, ¶45). The parties also agree that after Plaintiff consulted with his attorney and signed the Miranda waiver, Villanueva co-signed the waiver as a witness. (Doc. 150, ¶49). It is agreed that during said interview, Plaintiff demonstrated to Villanueva and Micci how he tried to revive Joshua by shaking a plastic baby doll representing Joshua. (Doc. 150, ¶¶29, 51). The parties agree that Villanueva held the opinion that Plaintiff shook the plastic baby "violently." (Doc. 150, ¶52). There is also no dispute that on September 11, 2005, Villanueva signed the criminal complaint for Aggravated Battery to a Child. (Doc. 150, ¶¶55-56).

Regarding whether Villanueva possessed probable cause to charge Plaintiff with aggravated battery to a child, we must examine what information he possessed from September 9, 2005 to September 11, 2005, when initial charges were filed. It is clear from the record that Villanueva's role in this investigation was limited in that he was a witness to the interview and accompanied Carlson to the autopsy on September 14, 2005. However, both he and Micci personally observed Plaintiff shake a plastic baby in a manner that Villanueva considered "violent." (Doc. 150, ¶¶51-52). The portion of the video showing this demonstration confirms that Villanueva's belief in this regard was reasonable. (Doc. 149, ¶81; see also DVD #2 – 21:41:33-21:43:20). It cannot be said

that the information Villanueva acted upon, *at the time of the arrest*, was insufficient to support probable cause. Evidently, the Felony Review division agreed in that it expressly approved the charges. Based upon all of the above, it is clear that probable cause existed for Villanueva to arrest Rick Aleman for Aggravated Battery to a Child.

### F. False Arrest for Murder – Count III

Plaintiff's response brief does not identify any material issue of fact precluding summary judgment for Carlson and Fallon with regard to the second false arrest claim. (Doc. 147, pgs. 12-15). The thrust of the Plaintiff's argument on this issue is that Carlson and Fallon failed to fully investigate prior to requesting upgraded charges. There is no evidence that Fallon played a role in the upgrade of charges. As a preliminary matter, Count III of Plaintiff's First Amended Complaint (Doc. 43) does not contain allegations regarding any failure to investigate, nor is there a separate count for relief in this regard. Without waiving their objection to the absence of allegations regarding a purported "failure to investigate", Carlson and Fallon submit that "once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." See Baker v. McCollan, 443 U.S. 137, 145-46, 99 S. Ct. 2689, 2694-96, 61 L.Ed.2d 433 (1979).

In support of his theory of a failure to investigate, Plaintiff directs the Court to BeVier v. Hucal, 806 F.2d 123 (7th Cir. 1986), which is claimed to be "on point." (Doc. 147, pg. 12). In BeVier, the plaintiffs' children were visibly ill and upon observing them, the defendant-officer summoned medical assistance. Id. at 125. Plaintiff arrived on scene sometime thereafter and identified himself as the father of the children. Id. Rather

than taking the time to question the father, the defendant immediately placed him under arrest for child neglect. <u>Id.</u> In reversing summary judgment, the Seventh Circuit held that the defendant's mistake was failing to question the parents, the Red Cross Center personnel (who would have confirmed that the children had been previously taken to the hospital) and the teenaged babysitter who was responsible for watching the children and who would have confirmed that the parents had given her care instructions. <u>Id.</u> at 127. This failure to investigate was deemed "unreasonable" insofar that the defendant had no information regarding the plaintiff's intent – a necessary element for child neglect. <u>Id.</u> at 128. The reviewing court also found that the defendant was not entitled to qualified immunity. <u>Id.</u> at 128-9.

The instant Plaintiff is asking this Court to find that Carlson and Fallon placed him under arrest for murder without conducting *any* investigation, as was the case in <u>BeVier</u>. We know that Carlson (and Fallon to a lesser extent) were actively investigating this event from the very beginning. Indeed, Carlson was assigned to interview medical doctors and witnesses who had contact with Joshua within hours of the occurrence itself. (Doc. 150, ¶¶63-66). He did so and learned from the mother, Danielle Schrik, that she had never struck or hit Joshua. (Doc. 150, ¶66). He also attended the autopsy where he was provided a written summary from the medical examiner regarding her opinions. (Doc. 150, ¶110).

Plaintiff's position would require that officers conduct a trial before making an arrest. The Seventh Circuit has summarily rejected this proposition when there is probable cause to make an arrest:

- <u>Gramenos v. Jewel Companies</u>, 797 F.2d 432, 442 (7th Cir. 1986) (holding that "police need not automatically interview available witnesses, on pain of the risk that a jury will require them to pay damages. Good police practice may require interviews, but the Constitution does not require police to follow the best recommended practices. There is a gap, often a wide one, between the wise and the compulsory. To collapse those two concepts is to put the judicial branch in general superintendence of the daily operation of government, which neither the Fourth Amendment nor any other part of the Constitution contemplates").

- <u>Garcia v. City of Chicago</u>, 24 F.3d 966 (7th Cir. 1994) (holding that once a judge makes a probable cause determination at a <u>Gerstein</u> hearing, that determination is sufficient to bring the case to trial) (citing <u>Gerstein v. Pugh</u>, 420 U.S. 103, 119-124, 95 S. Ct. 854, 865-868 (1975)).

- <u>McBride v. Grice</u>, 576 F.3d 703, 707-8 (7th Cir. 2009) (finding of probable cause to arrest for battery when there is visible injury to complainant and a video depicting struggle involving Plaintiff – no need to investigate further).

- <u>Kompare v. Stein</u>, 801 F.2d 883 (7th Cir. 1986) (summary judgment affirmed for claim that defendant failed to fully investigate death of child) (discussed *infra*).

There is no duty to further investigate once probable cause to arrest has been established. <u>BeVier</u> is distinguishable because Plaintiff was arrested after probable cause was established and after an investigation had been undertaken. Defendants respectfully request that the Court dismiss Plaintiff's Count III on these grounds as well.

## II.    QUALIFIED IMMUNITY IS A BAR TO ALL CONSTITUTIONAL CLAIMS

In opposition to Defendants' assertion of qualified immunity, Plaintiff simply states (without citation) that "there is ample evidence… that the Defendants ignored, twisted and fabricated evidence to support their false presumption that Plaintiff caused Joshua's fatal injuries." (Doc. 147, pg. 11). Respectfully, there is no evidence to suggest that *any* of the Defendants engaged in such behavior such that they "knowingly violated the law." <u>Id</u>. Plaintiff's contention that the Defendants were mistaken in their belief that Plaintiff committed this crime fits squarely into the argument that even if probable cause

was lacking, the Defendants are entitled to qualified immunity because their beliefs, even if mistaken, were "objectively reasonable" under the circumstances.

The Seventh Circuit opinion in <u>Kompare v. Stein</u>, 801 F.2d 883 (7th Cir. 1986), has a fact pattern strikingly similar to the facts and circumstances of this case. Each matter involves the tragic death of a child; injuries and medical opinions supporting criminal charges against the adult who last had custody of the child; the return of a grand jury indictment; and a claim that the defendant(s) failed to fully investigate.

In <u>Kompare</u>, the plaintiff was charged with voluntary manslaughter after her five (5) year old son, Jody, died due to abdominal hemorrhaging. <u>Id.</u> at 885. During the autopsy, the defendant, Dr. Richmond, a Cook County Medical Examiner, noted twenty-two (22) separate areas of injury, most of which were superficial bruises which occurred between one (1) and twenty-four (24) hours preceding Jody's death. <u>Id.</u> While none of the injuries indicated trauma to the abdomen, the injuries did indicate that Jody was a victim of child abuse. <u>Id.</u> Plaintiff was indicted for voluntary manslaughter based upon the defendant's report and plaintiff's admission to an investigating police officer that on the morning of the occurrence, that she struck Jody with her right arm to push him away from the kitchen table. <u>Id.</u> The matter was taken to trial where Ms. Kompare was found not guilty. <u>Id.</u> at 886.

The Kompares subsequently filed a federal civil rights complaint. Defendants filed their motion for summary judgment on the grounds of qualified immunity and prevailed on that issue. <u>Id.</u> On appeal, the Appellate Court determined that the plaintiffs were essentially arguing that the defendant failed to investigate fully Jody's death and failed to reveal exculpatory information. <u>Id.</u> at 888-889. However, the Court found that

there is no duty to investigate on either a coroner <u>or a policeman</u> and that the law is just the opposite, i.e. that the police have no constitutional duty to keep investigating a crime once they have established probable cause. <u>Simmons v. Wainwright</u>, 585 F.2d 95, 96 (5th Cir. 1978)(per curiam); <u>Gramenos v. Jewel Companies</u>, 797 F.2d at 439-40 (7th Cir. 1986).

**The Seventh Circuit held that a reasonable person would not have known that there was a constitutional violation by causing the initiation or continuation of prosecution for voluntary manslaughter when there is "a five-year-old boy, with twenty-two areas of bruising, and internal hemorrhaging beneath the scalp, die from blunt trauma to the abdomen which caused the small bowel mesentery to tear and bleed profusely, and where Mrs. Kompare admitted that, on the morning of this death, she hit the boy so hard that he doubled over in pain." <u>Id.</u> at 892. The Court further held that the "indictment establishes that there was probable cause for the prosecution, and we are bound by this determination because the indictment was fair upon its face and returned by a properly constituted grand jury." <u>Id.</u> (citing <u>Gerstein v. Pugh</u>, 420 U.S. 103, 117, n. 19, 95 S. Ct. 854, 865 n. 19, 43 L.Ed.2d. 54 (1975)). An indictment was returned against Aleman as well. (Doc. 150, ¶113).**

In affirming summary judgment on qualified immunity, the Court in <u>Kompare</u> held that the standard that the plaintiff attempts to impose is "unrealistic" and that "police officers…must be given freedom in which to exercise their discretion as to which leads to follow and when to follow them." <u>Id.</u> at 892. The instant Defendants request that this Court similarly find that they are afforded such discretion.

The Defendants respectfully submit that <u>Kompare</u> requires this Court to find as a matter of law that the Defendants are entitled to qualified immunity. Accordingly, this matter must be dismissed in its entirety.

## III. PLAINTIFF'S COUNT II FOR FAILURE TO INTERVENE MUST NECESSARILY FAIL IF THERE IS A FINDING OF PROBABLE CAUSE AND/OR APPLICATION OF QUALIFIED IMMUNITY

An officer who fails to prevent other law enforcement officers from violating the constitutional rights of citizens can be held liable under Section 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring." <u>Chavez v. Ill. State Police</u>, 251 F.3d 612, 652 (7th Cir. 2001).

Plaintiff's Count II has alleged a failure to intervene with respect to the September 9, 2005 arrest for aggravated battery. Because there was probable cause to make the arrest for aggravated battery, there can be no failure to intervene as no constitutional right was violated in the first instance. Similarly, if the Court were to find that some or all of the Defendants are entitled to qualified immunity, this count must necessarily fail as a matter of law.

## IV. THERE IS NO QUESTION OF FACT THAT A CIVIL CONSPIRACY EXISTED BETWEEN THE DEFENDANTS TO ARREST AND PROSECUTE RICK ALEMAN

In support of Counts IV and VII for federal and state-law conspiracy, Plaintiff directs the Court to three (3) distinct acts in an apparent effort to show an agreement between Defendants to violate Plaintiff's rights.

First, counsel claims that the Defendants lied to the medical examiner by telling her that Joshua was "up and running around" on the date of the occurrence. (Doc. 147, pg. 16). To the contrary, Dr. Jones testified that officers reported that parents who had observed Joshua that morning said that he was fine and that she could not recall anything more that was said about Joshua aside from that. [Pl. Ex. 11, pg. 32, lines 17-22; pg. 32, lines 23-24 and pg. 33, lines 1-5]. There is no dispute that Dr. Jones told them that the injuries were sustained on September 9, 2005 or that that day could not be ruled out as the date of injury. (Doc. 150, ¶¶70, 106). There is no dispute that Dr. Jones never believed that the officers were not being truthful with her in conveying known information. (Doc. 150, ¶108).  Again, it is difficult to determine how the investigating officers "lied" to Dr. Jones regarding Joshua's condition on September 9, 2005, when the very same parents that apparently possessed exculpatory information regarding Joshua's September 9, 2005 condition later testified before a grand jury, which led to an indictment. (Doc. 150, ¶¶111-112).

The second alleged act in support of conspiracy was that Defendants "deliberately hindered the DCFS investigation." (Doc. 147, pg. 16). This is nonsense. Mr. Booker, the DCFS investigator, was free to investigate as he saw fit and did so. That the mother and grandmother of Joshua Schrik did not return his phone calls is not indicative of a conspiracy to violate the Plaintiff's rights.

The third and final alleged act, is that the "Defendants falsely characterized Aleman's statements as a confession." (Doc. 147, pg. 17). Without citation to any portion of the record, Plaintiff suggests that the video shows the actions of a "properly trained person" trying to revive an unconscious baby. Id. Defendants urge the Court to

ignore this argument insofar that there is no citation to the record other than a passing reference to the video.

Plaintiff has the burden of showing (1) an express or implied agreement among defendants to deprive him of his constitutional rights, and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir.1988); see also Fries v. Helsper, 146 F.3d 452, 457 (7th Cir.1998). Plaintiff has not met his burden in this instance. The three (3) cited portions of this voluminous record do not establish a common plan to deprive Plaintiff of his rights. Defendants respectfully request dismissal of Counts IV and VIII.

## V. THERE IS NO QUESTION OF FACT THAT THE INTERROGATION OF RICK ALEMAN WAS WITHIN THE CONFINES OF *MIRANDA*[1]

Rather than re-iterate their argument in support of dismissal of Plaintiff's Count V, Defendants incorporate by reference arguments set forth in their Response to Plaintiff's Motion for Partial Summary Judgment on Count V. (Doc. 142).

The one part of Plaintiff's Response Brief addressing the interrogation that requires further response is Subsection C: "Defendants Advocate an Inapplicable Standard." (Doc. 147, pg. 21). There, Plaintiff claims that the Illinois State Police Defendants erroneously argue that a claim of this nature must rise to the level of a substantive due process violation. Citing Sornberger v. City of Knoxville, 434 F.3d 1006 (7th Cir. 2006), Plaintiff posits that he need only show a Fifth Amendment violation and use of the statement in the initiation of criminal proceedings.

---

[1] Plaintiff has moved for partial summary judgment as to Count V only. (Doc. 123-125). Defendants have filed their Joint Response to Plaintiff's Memorandum of Law and Statement of Facts. (Doc. 142-143).

In Sornberger, the plaintiff was taken into custody after investigators believed that she was involved in a bank robbery. There were issues of fact as to whether Teresa Sornberger had received Miranda warnings before she confessed. Id. at 1023. The Seventh Circuit was satisfied that her unwarned statements were used against her in her criminal case and in a manner that implicated the "Self-Incrimination Clause." Id. at 1026. The Court held that use of her confession, if the confession was indeed found to have been elicted without Miranda warnings, would allow a suit for damages under Section 1983. Id. at 1027.

Unlike the case in Sornberger where there was an issue of whether Miranda warnings were even provided, there is not dispute in that instant case that Miranda warnings were given. Further, in Sornberger, the trial court denied Teresa Sornberger's motion to suppress after hearing two days of testimony. Id. at 1020. That also did not occur in Plaintiff's case. Regarding whether the confession initiated Plaintiff's "criminal case", A.S.A. Karen Crothers testified that it was Dr. Reyes' opinions that initiated criminal charges. [Pl. Ex. 23, pg. 162, lines 17-20]. The State did not contest the defense attorney's motion to suppress because even without the confession, the State felt that it had more than enough to proceed with the prosecution [of Rick Aleman]. [Pl. Ex. 23, pg. 167, lines 8-19].

Because the confession was never used against Plaintiff during a criminal trial and because there was other evidence to initiate the criminal case, the Plaintiff's Fifth Amendment right against self-incrimination was never violated in the first instance. Defendants urge the Court to follow the U.S. Supreme Court decision in Chavez v. Martinez, 538 U.S. 760, 123 S. Ct. 1994, 155 L.Ed.2d 984 (2003), that limited the

availability of a Fifth Amendment violation as a basis for civil liability. <u>Chavez</u> left open the possibility that Plaintiff could pursue a claim for a violation of substantive due process, but such a claim does not present itself here.

Accordingly, for all of the reasons stated herein and in Defendants' Joint Response to the Plaintiff's Motion for Partial Summary Judgment, Defendants respectfully request that the Court grant summary judgment on Plaintiff's Count V for Illegal Interrogation.

## VI. PLAINTIFF'S STATE-LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST FAIL AS IT EXCEEDS THE APPLICABLE STATUTES OF LIMITATIONS – 735 ILCS 5/13-202 and 745 ILCS 10/8-101

In <u>Evans v. City of Chicago</u>, 434 F.3d 916 (7th Cir. 2006), summary judgment was granted by the district court based upon, *inter alia*, the plaintiff's failure to file his federal lawsuit within the two-year statute of limitations for §1983 claims and the one-year statute for his state-law claim of intentional infliction of emotional distress. Much like the argument presented by Plaintiff in the instant case, the plaintiff in <u>Evans</u> argued that the cause of action did not accrue until the termination of state criminal proceedings. <u>Id.</u> at 934. In affirming the district court, <u>Evans</u> held that under Illinois law the default rule is that "a cause of action or personal injuries accrues when the plaintiff suffers injury. <u>Id.</u> at 934 (citing <u>Golla v. General Motors Corp.</u>, 167 Ill.2d 353, 360, 212 Ill. Dec. 549, 657 N.E.2d 894 (Ill.1995). Both the §1983 claim and the intentional infliction of emotional distress claim were barred unless the "doctrine of continuing violation" applied. <u>Id.</u> at 934 (citing <u>Heard v. Sheahan</u>, 253 F.3d 316, 319 (7th Cir. 2001). Finding that this doctrine did not apply, the Seventh Circuit affirmed summary judgment. <u>Id.</u>

In the instant matter, Plaintiff cites to three (3) district opinions all of which pre-date the Seventh Circuit's opinion in <u>Evans</u>. Further, Plaintiff does not argue that the continuing violation doctrine applies under these circumstances. The Defendants respectfully request that the Court follow <u>Evans</u> and dismiss Count IX.

## VII. PLAINTIFF'S CLAIMS FOR MALICIOUS PROSECUTION CANNOT WITHSTAND SUMMARY JUDGMENT AS PROBABLE CAUSE EXISTED AND THERE IS NO EVIDENCE OF MALICE

Defendants contend that Plaintiff has failed to adduce evidence demonstrating (1) the absence of probable cause for such proceeding and (2) malice. Plaintiff's response fails to demonstrate why <u>Reed v. Chicago</u>, 77 F.3d 1049, 1053 (7th Cir. 1996), should not control here. <u>See</u> <u>Id.</u> at 1053 ("where is an indictment, a plaintiff must show that the police officer pressured, influenced, or made a knowing misstatement to the prosecutors"). Plaintiff counters by claiming that this is "exactly what Plaintiff *alleges*." (Emphasis added). Allegations, however, are insufficient to withstand summary judgment. Plaintiff's brief fails to direct the Court to any evidence that either Carlson or Villanueva mislead prosecutors. (Doc. 147, pgs. 22-23).

Even if there is a question of fact regarding probable cause for the proceeding (which Defendants do not concede), Plaintiff cannot prove malice on the part of Carlson or Villanueva. Plaintiff suggests that Officer Carlson's "personal involvement" with Danielle Schrik (which again finds no support in the record) is evidence of malice. Plaintiff's response says nothing regarding malice on the part of Villanueva.

It is evident that Plaintiff cannot establish all five (5) elements of malicious prosecution which is fatal. Defendants, Carlson, Villanueva and the Village of Hanover Park, as their employer, request summary judgment as to Counts VI and VII.

**WHEREFORE**, the Defendants, VILLAGE OF HANOVER PARK, OFFICER

CAROL LUSSKY, OFFICER TODD CARLSON, OFFICER ERIC VILLANUEVA,

ILLINOIS STATE POLICE MASTER SERGEANT JOSEPH MICCI and ILLINOIS

STATE POLICE MASTER SERGEANT GERARD FALLON, respectfully request that the

Court grant their respective Motions for Summary Judgment.

Respectfully submitted,

/s/ Michael R. Hartigan
HARTIGAN & O'CONNOR, P.C.
Russell W. Hartigan
Patrick H. O'Connor
Michael R. Hartigan
20 N. Clark Street #1250
Chicago, IL 60602
(312)201-8880
(312)201-8905 (F)

ARDC No. 06272355

One of the Attorneys for Village
of Hanover Park, Officer Carol
Lussky, Eric Villanueva and Todd
Carlson

LISA MADIGAN
Attorney General of Illinois

/s/ Peter C. Koch
PETER C. KOCH
Assistant Attorney General
General Law Bureau
100 W. Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-6534
(312) 814-4425 (F)

Attorney No. 99000

One of the Attorneys for the Illinois
State Police Defendants